In the Matter of the Estate of ONOFRIO ABRUZZO, Deceased.

Surrogate's Court, Kings County, March 17, 1931.

*Reuben Leslie Maynard,* for Atala Mena, executrix.

*Baldassare Lamberta* [*Sidney H. Segelbaum* of counsel], for Filippo Bilello and Calogero Abruzzo, executors.

*Daly, Hoyt & Mason,* for the mayor, town assessors and counselors of Santa Margherita Belice, Italy, respondent.

WINGATE, S.   The sole question here presented is as to whether, under existing rules of law, this court can assure the payment of a reasonable sum for attorneys' fees for services performed in connection with an estate in this court, or whether the counsel who have rendered these services must be remitted to a suit at law in Italy to recover them.

This court has had recent occasion to indicate its attitude respecting its right and obligations in enforcing upon attorneys practicing before it the highest degree of fair dealing in their relations to their clients. (*Matter of Anderson,* 136 Misc. 110; *Matter of Strandburg,* 138 id. 732; Id. 859.)   It must follow as a natural complement and corollary, that it is the obligation of the court in so far as may be permitted by law, to see to it that clients interested in proceedings before this court treat their attorneys in a just and equitable manner.

The facts which give rise to the present application were largely reviewed by this court in its former opinion in this case (reported in 137 Misc. 299), and will here be referred to only as presently pertinent.

The instant testator died in the year 1915, leaving a will which was admitted to probate in this court in June, 1916.   After making certain provisions for two named beneficiaries, he gave his entire residuary estate for the purpose of organizing and maintaining a charity in the town of Santa Margherita Belice, Italy.

This will was an Italian notarial document, the effect of which was long the subject of reasonable doubt.   The two principal questions at issue respecting it were, *first,* whether or not certain funds and securities aggregating $17,753.57 passed to the individuals named in the will, as specific bequests, and, *second,* whether the charitable residuary trust was valid.

The petitioners in this proceeding were retained on April 22, 1916, by the Italian Consul in New York on behalf of the residuary charitable trust, which retainer was later directly ratified by the Italian town in which the maintenance of the charity was directed by the will. Their services on behalf of their clients continued practically without interruption from April, 1916, up to the time of the entry of the decree on the intermediate judicial settlement of the accounts of the executors, in June, 1930.

Without enumerating in detail the extended and arduous labors performed on behalf of their clients, it may be noted that, in addition to extended services in other directions, they participated in the probate of the will, took part in two abortive construction proceedings before Surrogate KETCHUM in this court, were extremely active in the successful construction proceeding conducted in the Supreme Court, and, finally, inaugurated the compulsory accounting which terminated, after its consolidation with a subsequent voluntary proceeding, in the decree entered herein. Almost entirely as a result of their efforts and success in the face of very considerable difficulties encountered, the validity of the residuary charitable trust was established and the claims of the named legatees to the specific property, exceeding $17,000 in value, were defeated *in toto*.

Objection is made in this proceeding to various items of services performed on the ground that they did not constitute valuable contributions to the establishment of the rights of their client. The court is unable to coincide with this view, but even were it to be conceded, it is obvious that the beneficial services actually rendered far exceeded in value the remuneration of $3,500 and the $32.40 disbursement herein sought.

Objection is further made that the services were not rendered for the benefit of the estate. With this objection the court is, on the whole, inclined to agree, but the point is irrelevant for present purposes. At no time did they purport to represent the estate and any benefits conferred upon it were purely incidental to their primary duty to their clients and for the purpose of increasing the general corpus of the estate which, under the will as construed, passes to their clients as residuary legatees. Obviously, however, since any payment to them from the estate funds must inevitably come from the residue to which their clients alone are entitled, the question is immaterial, as such payment would be solely from their client's interest in this estate.

By the decree entered herein under date of June 10, 1930, the executors were directed to pay to Banca d'Italia, of Rome, Italy, the foreign trustee for the charitable trust, the sum of $26,255.35.

Neither this sum nor any part of it has actually been expended, and it is now in the hands of the executors.

At common law it was well established that attorneys possessed liens of two varieties in respect to the property and causes of action of their clients. The first was the so-called retaining lien, by virtue of which an attorney was permitted to continue in possession of any papers belonging to his client which came into his hands, until payment for his services had been made. The second, which was also universally recognized, was that " an attorney also has a lien upon the fund or judgment which he has recovered for his compensation as attorney in recovering the fund or judgment, and that is denominated a charging lien." (*Goodrich* v. *McDonald*, 112 N. Y. 157, 163.) Concerning this latter, the Court of Appeals says, in the case last cited (at p. 163) " The lien, as thus established, is not strictly like any other lien known to the law, because it may exist although the attorney has not and cannot, in any proper sense, have possession of the judgment recovered. It is a peculiar lien, to be enforced by peculiar methods. It was a device invented by the courts for the protection of attorneys against the knavery of their clients, by disabling clients from receiving the fruits of recoveries without paying for the valuable services by which the recoveries were obtained. The lien was never enforced [164] like other liens. If the fund recovered was in possession or under the control of the court, it would not allow the client to obtain it until he had paid his attorney, and in administering the fund it would see that the attorney was protected."

As existing at common law this lien was held to arise only after the reduction of the particular claim to judgment. In 1899, however, by chapter 61 of the laws of that year, the Legislature extended this right, making it apply to the subject-matter of a cause of action or special proceeding from the time of its commencement. That statute has been continued substantially unchanged and is now found in section 475 of the Judiciary Law which reads as follows: " Attorney's lien in action or special proceeding. From the commencement of an action or special proceeding, or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, decision, judgment or final order in his client's favor, and the proceeds thereof in whosoever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment or final order. The court upon the petition of the client or attorney may determine and enforce the lien."

It has repeatedly been determined that both at common law

and under the statute, this lien extends to a decree in a Surrogate's Court. (*Matter of Fitzsimons*, 174 N. Y. 15, 21; *Matter of Williams*, 187 id. 286, 291; *Matter of Regan*, 167 id. 338.) In the last cited case the court uses the following language (at p. 343): " Assuming that there is no distinction with respect to the lien in question between the claim of an attorney for professional services in the Surrogate's Court and that for services in any other court, the conclusion must follow that in this case the attorneys had a lien upon the decree entered by the surrogate for their reasonable compensation, and the surrogate had power to protect it by vacating the satisfaction of the decree made in disregard of their rights." In *Fischer-Hansen* v. *Brooklyn Heights Railroad* (173 N. Y. 492, at p. 499) the court says: " The statute is remedial in character, and hence should be construed liberally in aid of the object sought by the legislature, which was to furnish security to attorneys by giving them a lien upon the subject of the action. The common law gave them no lien until the entry of judgment, but the statute gives them one from the commencement of the action. If the claim is prosecuted to judgment, or to a decision upon which judgment may be entered, the lien reaches forward and attaches to that also."

It must follow both from the statute and from the firmly established common law of this State in the absence thereof, that the petitioners in the present proceeding are entitled to a lien upon the recovery granted to their client in the decree of June 10, 1930, to the extent of the value of their services in connection with the proceeding. The question thereupon arises as to whether they are entitled to such a lien for all services rendered by them in the entire case for the benefit of their client since April 2, 1916, or are to be limited in their recovery to the value of the services rendered in connection with the accounting proceeding alone. It is, of course, well established that the various proceedings in a Surrogate's Court are theoretically separate and distinct. However, if a liberal construction of the statute is to be adopted as directed by the Court of Appeals, it must follow that in a case like the present, where all of the different acts of the attorneys were, in the last analysis, directed to the one end of protecting the rights of the client and procuring a decree fixing and determining those rights, the various steps taken for this purpose are properly to be considered merely as parts of one integral whole. A contrary holding under facts similar to those here present would be little short of an absurdity, since it might result in permitting a recovery for services performed in connection with the accounting proceeding, while denying it in the far more difficult proceeding for a con-

struction of the will which, if not successfully prosecuted, would have precluded the possibility of any recovery by the client on the accounting. Support for these views may be found in *Matter of Wood* (170 App. Div. 533) and *Matter of Pieris* (82 id. 466; affd., 176 N. Y. 566). (See, also, *Matter of Williams*, 187 id. 286, 291.)

The court, therefore, determines that the petitioners' rights herein are co-extensive with their services on behalf of their clients in all proceedings leading up to the entry of the decree. It is further found that the reasonable value of the beneficial services performed by the petitioners for the residuary legatees, plus their disbursements in that regard, amounts to $3,532.40, and that the attorneys have a lien upon the recovery of their clients, as granted by the decree of June 10, 1930, to that extent.

Whereas, it appears from the decision of the Court of Appeals in *Matter of Regan* (167 N. Y. 338, 343, 344) that there is ample authority for vacating the decree of June tenth for the purpose of giving effect to this lien, such a course does not seem necessary or desirable in the proceeding at bar. The direction in that decree was that the " executors do then pay Banca d'Italia of Rome, Italy, $26,255.35." Effect may be given to the lien of the attorneys herein by merely amplifying this direction at the foot of the decree for the manner of making this payment, to the effect that it shall be made by turning over to the attorneys for the residuary legatees the sum of $3,532.40 and then paying the balance to Banca d'Italia direct.

Proceed accordingly. ———