**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JOHN A. TURJA; RICHARD H. TURJA,
<u>Plaintiffs-Appellants,</u>

v.
                                        No. 96-2413
STEPHEN F. TURJA, Individually and
as executor of the estate of Marion
A. Turja,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
James C. Cacheris, Chief District Judge.
(CA-95-1178-A)

Argued: May 7, 1997

Decided: July 8, 1997

Before MURNAGHAN and MOTZ, Circuit Judges, and STAMP,
Chief United States District Judge for the Northern District of
West
Virginia, sitting by designation.

_____

Affirmed by published opinion. Judge Motz wrote the opinion, in
which Judge Murnaghan and Chief Judge Stamp joined.

_____

**COUNSEL**

**ARGUED:** Jeffrey Scott Larson, Angelo I. Castelli, Greenbelt, Mary-
land, for Appellants. James Carlton Howard, Jr., BEAN, KINNEY &
KORMAN, P.C., Arlington, Virginia, for Appellee.

_____

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

The appeal involves the venerable, but infrequently discussed, probate exception to a federal court's diversity jurisdiction. Two brothers brought this action against a third brother alleging that he exercised undue influence over their mother, which led her to execute a will, a trust agreement, and related documents in his favor. After a bench trial, the district court concluded that the mother lacked the requisite mental capacity and was unduly influenced in executing the trust documents, and so voided them. The district court, finding that it lacked jurisdiction because of the probate exception, refused to exercise jurisdiction over the will or rule on the mother's capacity to execute it. The contesting brothers appeal, asserting that the district court erred in refusing to exercise jurisdiction over the will, and in not awarding them attorneys' fees under the trust agreement. We affirm.

I.

John, Richard, and Stephen Turja are the only children of Dick and Marion Turja. John, a resident of Hawaii, and Richard, a resident of Utah, brought this suit, based on diversity of citizenship, against Stephen, a Virginia resident.

The family originally understood that the Turja estate (primarily the family home with a stipulated present value of $301,000) would go to the surviving parent, and after that parent's death, be split among the three sons. Since 1978, Stephen has lived with his parents, and in more recent years spent a substantial portion of his time caring for their needs. Indeed, in 1983, Stephen quit his full time job to assist his parents, who were becoming disabled. By 1986 Marion Turja, who had been close to all of her children and grandchildren, had become increasingly disoriented, confused, and drew away from them. At the time her husband died in 1991, Marion was quite disoriented and likely suffering from Alzheimer's disease.

2

On August 5, 1992, Marion executed a will bequeathing her china to John, forgiving a $10,000 loan to Richard, and leaving her house and residuary estate to Stephen. Later in the same month, Stephen took his mother to see a trusts and estates lawyer, Warren Grossman; Grossman was told that Marion wished to establish a living trust in which she would place most of her property, and at her death leave her china to John, forgive Richard's debt, and leave the house and her residuary estate to Stephen. Concerned that Marion was incompetent, Grossman contacted Marion's doctor and asked him to assess her testamentary capacity. After several visits, that doctor determined that Marion suffered from dementia and lacked the capacity to execute legal documents. Grossman then refused to create the trust. However, Stephen managed nonetheless to have a trust created that would mirror the distribution set out in the August 5 will; Marion executed the trust in November 1992 and additional related documents in January 1993, apparently again at Stephen's urging.

Marion died in August 1993. Stephen did not contact his brothers or his mother's sisters to inform them of his mother's death, and was the only person who attended her burial. A month later, he conveyed the family residence to himself pursuant to the trust agreement. Richard first learned of his mother's death through one of his wife's friends, who worked for the insurance company that handled Marion's death benefits.

After discovering what had happened, on November 1, 1993, John and Richard brought suit in the Circuit Court of Arlington County, Virginia. On December 30, 1993, Stephen offered Marion's will for probate in that court. Subsequently, John and Richard nonsuited their state action and, on August 24, 1995, filed this action in federal court against Stephen, individually and as executor of their mother's estate.

The complaint alleged six counts: Count I, lack of testamentary capacity; Count II, undue influence; Count III, fraud; Count IV, action to set aside deed and other transfers; Count V, constructive trust; and Count VI, unjust enrichment. The district court dismissed the first two counts without prejudice insofar as they involved Marion's will; the court reasoned that it had no subject matter jurisdiction over those claims because "federal courts may not hear probate matters as part of their diversity jurisdiction."

3

The court tried the remainder of the case. After a two-day bench trial, the court found: that Marion lacked the mental capacity to execute the trust documents, that Stephen exercised undue influence over his mother in order to get her to execute them, and "[t]hat the amendment to the Turja trust and other related legal documents . . . should be set aside as null and void." The court did not reach the other causes of action, finding resolution of them unnecessary to its holding.

John and Richard moved for attorneys' fees, under a provision in the trust agreement that provided for attorneys' fees to a prevailing party in the case of "any dispute arising out of this trust." The district court denied fees, holding that because it had invalidated the trust agreement, the provision in it regarding attorneys' fees could not be enforced.

John and Richard appeal; Stephen filed no cross appeal.

II.

John and Richard assert that the district court erred in refusing to exercise jurisdiction over their claims that Marion lacked testamentary capacity and was unduly influenced in executing her will.

They concede that this court has recognized the "probate exception" as a jurisprudential limit on diversity jurisdiction. See Foster v. Carlin, 200 F.2d 943 (4th Cir. 1952). However, they contend that the probate exception does not apply here because the relief they seek in connection with the will, which at the time the suit was filed only controlled personal property worth $100, was "incidental" to the other relief sought here. John and Richard rely on recent, out-of-circuit cases limiting the probate exception and argue that it would be a waste of judicial resources, as well as prejudicial to them, as non-Virginia residents, to relitigate questions as to the validity of the will in the state probate court.

It is hardly clear that the relief they seek with regard to the

will is
"incidental" to the other relief requested. True, if the district court had
upheld the trust documents, most of Marion's assets would have
passed through the trust. However, now that the district court has

4

invalidated the trust documents, indisputably all of Marion's property
will pass through her will. Thus, as soon as John and Richard accom-
plished the very result they sought as to the trust, Marion's will and
their claim that she lacked testamentary capacity and was unduly
influenced by Stephen in its execution became central -- rather than
incidental -- to this litigation.

Moreover, a federal court does not gain jurisdiction to determine
a will's validity merely because the issue is "incidental" to other claims.[1]
Instead, we must look at the contours of the "probate exception," for
if John and Richard's claims regarding their mother's will fall within
this exception to federal diversity jurisdiction, the district court may
not address them no matter how close their connection to claims (like
those involving creation of the trust) over which a federal court does
have jurisdiction.

The leading Supreme Court precedent is Markham v. Allen, 326
U.S. 490 (1946). In Markham, the Court determined that although "a
federal court has no jurisdiction to probate a will or administer an
estate . . . federal courts of equity have jurisdiction to entertain suits
`in favor of creditors, legatees and heirs' and other claimants against
a decedent's estate `to establish their claims' so long as the federal
court does not interfere with the probate or assume general jurisdic-
tion of the probate or control of the property in the custody of the
state court." Id. at 494 (citations omitted).

In Foster, 200 F.2d at 947, we further explained that:

_____

[1] Notwithstanding the arguments of John and Richard, Foster, 200 F.2d
at 948, is not to the contrary. There we simply noted that "[t]he fact that
complainant prays for incidental relief which the federal court is without
jurisdiction to grant does not prevent an adjudication by the federal court

of the rights of the respective parties in an estate." Id. The district court
followed that principle here and did not hold that the probate exception
prevented adjudication of the rights of the parties under the trust docu-
ments. Nothing in Foster suggests that a federal court can ignore the pro-
bate exception and assume jurisdiction over a claim over which it would
otherwise not have jurisdiction, if the relief sought is "incidental" to the
principal remedy requested in the litigation.

5

>The law is well settled that the federal courts have no jurisdiction over matters within the exclusive jurisdiction of state probate courts. However, as to matters which do not involve administration of an estate or the probate of a will, but which may be determined in a separate action <u>inter partes</u> in the courts of general jurisdiction of the state, the federal courts do have jurisdiction if the requisite diversity of citizenship exists.

See also <u>Farrell v. O'Brien</u>, 199 U.S. 89, 112 (1905) (asking whether "a will contest under the laws of Washington[is] an ordinary action or suit between parties [in which case the federal court has jurisdiction] or a special probate proceeding directly ancillary to or concerning the probate of the will," in which there is no federal jurisdiction). Thus we must examine the nature of John and Richard's undue influence and lack of testamentary capacity claims under Virginia law.

In Virginia, the probate court has jurisdiction to determine "whether the writing, or any part of it, is the true will of the deceased and whether the writing is testamentary in character." <u>Smith v. Mustian</u>, 234 S.E.2d 292, 296 (Va. 1977). A "proper" issue "to be decided during probate," is whether "the decedent possessed testamentary capacity at the time the writing was executed." <u>Id. See also</u> <u>Redford v. Booker</u>, 185 S.E. 879, 884-85 (Va. 1936) (exercising probate jurisdiction over undue influence claim). This jurisdiction is exclusive. <u>See Tate v. Chumbley</u>, 57 S.E.2d 151, 157 (Va. 1950) ("The issue of whether or not a testator had mental capacity to make a particular will can be rendered <u>res adjudicata</u> in a probate proceeding and none other."). We have previously recognized this feature of Virginia law, holding that federal courts have no jurisdiction over a suit brought to set aside a will based on claims of undue influence and mental incompetence. <u>See Guilfoil v. Hayes</u>, 86 F.2d 544, 545-46 (4th Cir. 1936) (finding claim brought "to impeach or establish the will" was "but supplementary to, and a continuation of, the original proceeding in probate," and thus the federal court lacked jurisdiction).**2**

---

**2** In view of this well established law and the district court's clear pre-trial ruling, John and Richard's argument that the court wrongly

amended its memorandum order post-trial to exclude mention of the will
is meritless. When the court originally included"wills" among the legal
documents that Marion "lacked testamentary capacity" to execute in its
order, it essentially made a clerical error which could be corrected by the
court <u>sua sponte</u>. <u>See</u> Fed. R. Civ. P. 60(a).

6

Recent out-of-circuit precedent suggests that the probate exception to federal diversity jurisdiction may lack strong historical roots, see Dragan v. Miller, 679 F.2d 712, 713 (7th Cir. 1982), and limits its reach in certain circumstances. See Glickstein v. Sun Bank/Miami N.A., 922 F.2d 666, 672-73 (11th Cir. 1991); Ashton v. Josephine Bay Paul & C. Michael Paul Found., 918 F.2d 1065, 1071-72 (2d Cir. 1990). However, the parties have not cited, and we have not located, a single case in which a federal court has found jurisdiction to invalidate a will due to lack of testamentary capacity or undue influence, much less a case involving Virginia law. Rather, all of the precedent is to the contrary. See, e.g., Michigan Tech Fund v. Century Nat'l Bank, 680 F.2d 736, 739 (11th Cir. 1982) (concluding that "[a] challenge to the validity of a will is not within the jurisdiction of the federal courts under the probate exception"); Dragan, 679 F.2d at 714-17 (finding probate exception bars jurisdiction to hear action to declare will invalid "because of undue influence" and to have decedent's property pass through state intestacy statute); Kausch v. First Wichita Nat'l Bank, 470 F.2d 1068 (5th Cir. 1972) (finding federal district court had no diversity jurisdiction in suit to set aside will on grounds of lack of testamentary capacity and undue influence).

There are good reasons for the probate exception's limit on federal jurisdiction. As Judge Posner explained in one of the cases upon which John and Richard principally rely, reserving probate matters to state courts generally promotes legal certainty, judicial economy, and resolution by a court expert in those matters. Dragan, 679 F.2d at 714-16. Although in this case, honoring the probate exception will result in a somewhat inefficient use of judicial resources, in most lawsuits that will not be the case. Furthermore, we note that John and Richard could have avoided the duplication here by pursuing their case where they originally initiated it -- in state court. Finally, we are confident that the Virginia probate court will take into account the district court's factual findings regarding the trust documents when evaluating Marion's testamentary capacity to execute her will. **3**

_____

**3** Throughout this case, Stephen has unequivocally asserted that the probate of his mother's will has not been closed, but simply has "re-
mained dormant depending on the outcome of th[e federal] litigation."
Brief of Appellee at 6. In his appellate brief he further asserted that

7

III.

John and Richard also appeal the district court's order denying
them attorneys' fees. Under Virginia law, "[o]rdinarily, in the
absence
of a statutory or contractual provision to the contrary, attorneys'
fees
are not recoverable by the prevailing litigant." Gilmore v. Basic
Indus., Inc., 357 S.E.2d 514, 517 (Va. 1987).

The trust agreement provided:

> In any dispute arising out of this trust, the losing party
> shall
> pay to the prevailing party reasonable costs and expenses
> incurred  in  connection  with  any  suit  .  .  .  including
> attorneys'
> fees . . . .

John and Richard assert that this clause provides them with a con-
tractual  right  to  fees  since  they  were  undisputably  prevailing
parties

_____

"when this litigation is final, there will be active probate issues
to deal
with in Arlington County [probate court]." Id. At oral argument,
how-
ever, Stephen suggested for the first time that he would argue in
probate
court that the two-year statute of limitations in Va. Code Ann. §
64.1-90
(Michie 1995) (governing actions by out of state residents to
impeach
wills) had now expired and barred John and Richard from asserting
their
claims of undue influence and lack of testamentary capacity. The
probate
court will, of course, have to address this argument. However, it
may be
meritless, in view of Va. Code Ann. § 8.01-229(E)(1) (Michie Supp.
1996), which provides that a limitations period is tolled by an
action
"commenced within the prescribed limitation period" and "dismissed
without determining the merits." Stephen offered Marion's will for
pro-
bate on December 30, 1993; John and Richard instituted the present
action (which was dismissed "without determining the merits" of all
challenges  to  the  will)  on  August  24,  1995,  well  within  the
two-year lim-
itations period in § 64.1-90. Apparently, John and Richard also
filed an
earlier action in state court on November 1, 1993, see Turja v.

<u>Turja</u>, Ch. No. 93-950 (Cir. Ct. Arlington County filed November 1, 1993), which they subsequently nonsuited; however, since that action was filed <u>prior</u> to the time the will was offered for probate, it presumably has no effect at all on the limitations period for challenging the will. <u>Cf.</u> Va. Code Ann. § 8.01.229(E)(3) (Michie Supp. 1996).

8

in their suit to invalidate the trust.**4** The district court, however, con-
cluded that since it had declared the trust agreement "null and void,"
this clause in the trust agreement could not provide a contractual basis
for attorneys' fees.

The clause providing for attorneys' fees is not severable from the voided trust agreement. As John and Richard note, under Virginia law, a contract that is invalidated can sometimes be enforced against a breaching party. Cohen v. Mayflower Corp., 86 S.E.2d 860 (Va. 1955). However, a testamentary instrument created by an individual who lacks testamentary capacity is void in its entirety. See 1 William J. Bowe & Douglas H. Parker, Page on the Law of Wills § 12.46 (1960) ("If the testator lacks mental capacity, the will is void . . . . It cannot be valid in part and void in part.") (footnotes omitted). John and Richard do not argue that Marion's incapacity only affected a portion of the trust documents. Absent such a showing, the district court was correct to find that the attorneys' fees provision, like the remainder of the trust agreement, was void and could not provide a contractual basis for attorneys' fees.

_____

**4** On appeal, John and Richard assert two additional arguments. First, they claim that under Virginia law, a trustee must bear the costs of litiga-tion when he is its cause. See Wiglesworth v. Taylor, 391 S.E.2d 299, 303-304 (Va. 1990) (finding trustee may not be reimbursed for attorneys' fees from trust when he causes litigation). However, they cite no Virginia case holding that a trustee is liable for fees incurred by challengers to a trust, absent a contractual or statutory provision. Second, they urge us to make an exception to Virginia's rule of no attorneys' fees absent statu-tory or contractual authority for "public policy" reasons. See generally American-LaFrance & Foamite Indus., Inc. v. Arlington County, 192 S.E. 758, 763-64 (Va. 1937). Again they cite no Virginia case on point -- or indeed a case from any jurisdiction supporting a public policy exception in a situation similar to that at hand. Since John and

Richard made neither of these arguments before the district court and since they have offered no persuasive authority for either argument, we decline to address them on appeal. <u>See United States v. Bornstein</u>, 977 F.2d 112, 115 (4th Cir. 1992) (finding this court can not address issue raised for the first time on appeal absent plain error or miscarriage of justice).

9

Thus the judgment of the district court is

<u>AFFIRMED</u>.

10