**VANGRACK, AXELSON & WILLIAMOWSKY, P.C. Plaintiff,**

v.

**ESTATE OF MEHRU ABBASI Defendant.**

**No. CIV. PJM 02–2662.**

United States District Court, D. Maryland.

May 1, 2003.

Aaron Robert Caruso, Esquire, Lawrence S. Jacobs, Esquire, Rockville, for Plaintiffs.

Estate of Mehru Abbasi, Rockville, for Defendants.

## AMENDED OPINION

MESSITTE, District Judge.

Plaintiff VanGrack, Axelson & Williamowsky, P.C. (the Law Firm) and Defendant the Estate of Mehru Abbasi (the Estate) assert competing claims to funds which the Law Firm helped the Estate recover from the Maryland Real Estate Commission (MREC). The Law Firm has asserted an attorney's charging lien against the funds for services rendered to the Estate in recovering the funds and possibly for services rendered in connection with other aspects of the Estate's administration in the State of Maryland. The Estate seeks to obtain full possession of the funds and have the matter of the Law Firm's fees, if any, referred for decision to the High Court of Sindh in Pakistan, the domicile of the decedent, Dr. Mehru Abbasi (Decedent), at the time of her death.

The Estate removed the case to this Court from the Circuit Court for Montgomery County after the MREC filed an interpleader action in that court naming the parties as potential claimants to the funds.[1] Although the parties have filed various motions in this litigation,[2] neither has addressed the issue of whether the Court, in light of the probate exception to federal diversity jurisdiction, has subject

---

1. Pursuant to this Court's order, the MREC, as a mere stakeholder, deposited $134,749.94 into the Registry of this Court and was dismissed from the case. By subsequent order, the Court designated the Law Firm as Plaintiff and the Estate as Defendant.

2. These include the Estate's Motion for Summary Judgment [Paper No. 9], the Law Firm's

matter jurisdiction over the case. The Court, however, is obliged to consider that issue sua sponte. *See Mansfield, C & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 382, 4 S.Ct. 510, 28 L.Ed. 462 (1884). Having done so, the Court holds that, although it possesses jurisdiction to adjudicate the Law Firm's entitlement to fees already approved by the Montgomery County Circuit Court Sitting as the Orphans' Court (the State's probate court),[3] it does not at present have jurisdiction to determine the Law Firm's entitlement to fees not yet approved by that court. On the other hand, with respect to those remaining fees, and doubtless some are due, this Court will recognize the validity of the Law Firm's charging lien against the balance of the funds now in the Court's Registry and will retain jurisdiction over those funds until such time as the Law Firm may receive an additional award of fees from the Montgomery County Orphans' Court.

## I.

On May 31, 1996, Decedent died testate in Karachi, Pakistan. At the time of her death, she owned extensive real and personal property located in Montgomery County, Maryland. On June 7, 1996, a petition for probate of Decedent's estate was filed in the Montgomery County Orphans' Court, and Decedent's daughter, Dr. Rafat Abbasi, was appointed personal representative of the estate.

From the outset, the Orphans' Court administered only Decedent's assets located in Maryland although, for one reason or another, it found her domicile at death to be Maryland. That determination ordinarily would have meant that the court could administer her personal property wherever located. *See Persson v. Dukes*, 280 Md. 194, 199, 372 A.2d 240, 243 (1977) (re-affirming that, in Maryland, "the lex domicilii governs the devolution of personalty") (citing *Harding v. Schapiro*, 120 Md. 541, 87 A. 951 (1913)).

Dr. Athar Abbasi, Decedent's son, took issue with the Maryland court's assumption of jurisdiction in light of Decedent's Pakistani domicile. Apparently at his in-

Motion to Add Athar Abbasi as a Necessary Party Defendant [Paper No. 16], the Estate's Motion to Dismiss Cross–Claim [Paper No. 24], Abbasi's Motion to Dismiss the Law Firm's Third–Party Complaint [Paper No. 31], the Estate's Motion to Exclude Expert Evidence [Paper No. 32], the Estate's Motion for Protective Order [Paper No. 43], and the Law Firm's Motion to Compel Deposition Testimony of Abbasi [Paper No. 45].

3. Most orphans' courts in Maryland exist independently of the circuit courts of the State, the trial courts of general jurisdiction. *See generally* Md. Const. art. IV, § 1. Montgomery County is one of the two exceptions, where the circuit court also sits as the orphans' court. *See* Md. Const. art. IV, § 20(b). When the Circuit Court for Montgomery County sits as the Orphans' Court, however, it exercises the limited jurisdiction of the Orphans' Court, not the general jurisdiction of the circuit court. *See Willoner v. Davis*, 30 Md.App. 444, 448, 353 A.2d 267,

270 ("That a judge of the Circuit Court for Montgomery County, who ordinarily exercises the power to decide declaratory actions, may also sit as a judge of the Orphans' Court for Montgomery County does not mean that when a circuit judge sits as the judge of the Orphans' Court he may exercise his authority and power as a circuit court judge. The law is that when a circuit judge presides in an Orphans' Court proceeding, he has no more authority in that case than an Orphans' Court judge, unless additional authority is lawfully conferred by the Legislature."), *aff'd sub nom. Davis v. Davis*, 278 Md. 534, 365 A.2d 1004 (1976).

Although the Orphans' Court in Montgomery County, as a matter of tradition, is known as "The Circuit Court for Montgomery County Sitting As the Orphans' Court," it will be referred to in this Opinion as the "Montgomery County Orphans' Court" or simply as "the Orphans' Court."

stance, more than two years after the Maryland probate proceedings had begun, probate proceedings were also opened in the High Court of Sindh in Karachi, Pakistan. On January 29, 1999, the Pakistani court appointed its Nazir[4] as executor of Decedent's estate. In conjunction with that appointment, the Pakistani court issued Letters of Administration and directed Decedent's next-of-kin, including Athar Abbasi, to accumulate all of Decedent's property, real and personal, tangible and intangible, and deposit it with the High Court for distribution by the Nazir. The Pakistani Court also sought to restrain other of Decedent's relatives from acting on behalf of the Estate in Maryland.[5]

At about this time, Athar Abbasi engaged the Law Firm to attempt to have himself appointed personal representative in the Maryland Estate proceedings. Their "Legal Services Agreement," signed by Abbasi on May 21, 1999, provided, inter alia, that the Law Firm would "represent the estate in connection with estate administration and with such other matters as the Client may direct (either orally or in writing)."[6] Abbasi simultaneously executed a personal guaranty of the fees.

On June 4, 1999, the Law Firm succeeded in having Abbasi appointed successor personal representative in the Maryland proceeding, after obtaining the consent of Rafat Abbasi, who resigned as personal representative.[7]

In October 1999, as one of its initial acts on behalf of the Estate, the Law Firm filed a motion with the Orphans' Court to change Decedent's domicile from Maryland to Pakistan. The Orphans' Court would not act upon the motion until July 2001. In the meantime, the Law Firm undertook to represent the Estate in a variety of matters.

One of the Firm's principal engagements was to attempt to recover funds that managers of Decedent's real estate in Montgomery County had embezzled from Decedent during her lifetime and during the initial stages of the Estate's administration. To that end, the Law Firm obtained a judgment in excess of $329,000.00 against two especially culpable individuals. The Firm also continued to pursue an action that Abbasi's predecessor personal representative had brought before the MREC seeking damages for the same fraud from the Real Estate Commission Guaranty Fund.[8]

4. A "Nazir" is a Deputy Registrar of the Provisional High Court in Pakistan. The position is an administrative post carrying the responsibility to manage an estate and periodically report on its administration to the High Court. See E-mail from Waleed Malik, Judicial Reform Specialist, The World Bank, to Peter J. Messitte, United States District Judge, United States District Court for the District of Maryland (Mar. 21, 2003, 16:09:00 EST) (on file).

5. Subsequently, by Order dated May 27, 2002, the High Court of Sindh authorized Athar Abbasi, as agent for the Nazir, to administer that portion of Decedent's estate located in or associated with the United States.

6. The "Legal Services Agreement" between the Law Firm and the Estate also contains an

arbitration clause providing that all fee disputes be submitted to the Bar Association of Montgomery County, Maryland Fee Arbitration Committee. The record does not reveal whether the parties pursued arbitration prior to this action.

7. Apparently because of his prior conduct in the proceedings, Athar Abbasi's appointment was made conditional upon his not filing any pleadings or appearing at the courthouse unless accompanied by Jeffrey M. Axelson, Esquire, a member of the Law Firm.

8. A defrauded client of licensees of the Maryland Real Estate Commission may make a claim for compensation out of the Real Estate Commission Guaranty Fund. See Md.Code Ann., Bus. Occ. & Prof. § 17–401 to –412 (2000 & 2002 Supp.).

This MREC claim, which is particularly relevant to the litigation now before the Court, was originally filed on November 24, 1998, by Rafat Abbasi. In January 2000, after succeeding her as personal representative, Athar Abbasi filed an amended claim against the Fund. On January 24, 2001, an administrative hearing was held in the matter. At the hearing, Jeffrey M. Axelson, Esquire, on behalf of the Law Firm, appeared as counsel for the Estate while Athar Abbasi appeared as the Estate's sole witness. A decision would not be rendered in the matter until May 10, 2001.

In the meantime, the Law Firm continued to accrue substantial billable time on behalf of the Estate, which the Estate readily acknowledged. Thus, pursuant to Section 7–602 of the Estate and Trusts Article of the Maryland Code,[9] the Orphans' Court, by Order dated December 21, 2000, authorized Athar Abbasi to pay interim counsel fees to the Firm in the amount of $46,291.35, and by Order dated January 17, 2001, authorized payment of an additional $30,318.80. Those fees, which Athar Abbasi has apparently never paid,[10] are the partial subject of the litigation presently before the Court.

Events broke fairly quickly thereafter. On May 10, 2001, the administrative law judge who heard the Estate's claim against the Real Estate Commission Guaranty Fund issued an opinion recommending an award to the Estate of $168,426.46. On June 10, 2001 the MREC affirmed the award. Then, in July 2001, following a hearing and briefing, the Orphans' Court for Montgomery County entered an order changing the Decedent's domicile from Maryland to Pakistan. Although the Law Firm continued to perform miscellaneous services for the Estate over the next few months, by October 2001 the Firm was preparing to file a lien for its fees against the MREC award.

By July 12, 2002, the Law Firm did so. In accordance with Section 10–501 of the Business Occupations and Professions Article of the Maryland Code[11] and Mary-

9. The statute provides,
> (a) An attorney is entitled to reasonable compensation for legal services rendered by him to the estate and/or the personal representative.
> (b) Upon the filing of a petition in reasonable detail by the personal representative or the attorney, the court may allow a counsel fee to an attorney employed by the personal representative for legal services. The compensation shall be fair and reasonable in the light of all the circumstances to be considered in fixing the fee of an attorney.
> (c) If the court shall allow a counsel fee to one or more attorneys, it shall take into consideration in making its determination, what would be a fair and reasonable total charge for the cost of administering the estate under this article, and it shall not allow aggregate compensation in excess of that figure.

Md.Code Ann., Est. & Trusts § 7–602 (2001). "Court," as used in the Estates and Trusts article, refers to "the orphans' court in a county, or the court exercising the jurisdiction of the orphans' court in a county." Md. Code Ann., Est. & Trusts §§ 1–101(f), 2–101 (2001).

10. The record reflects, however, that on December 18, 2000, Abbasi, as Personal Representative of the Estate, executed a Promissory Note in favor of the Law Firm in the amount of $73,610.15 ($3,000.00 less than the fees approved by the Orphans' Court), secured by a deed of trust upon 10 Estate properties in Montgomery County.

11. In relevant part, the statute provides,
> (a) Subject to subsection (b) of this section, an attorney at law has a lien on:
> (1) A cause of action or proceeding of a client of the attorney at law from the time the cause of action arises or the proceeding begins; and
> (2) A settlement, judgment, or award that a client receives as a result of legal services that the attorney at law performs.
> (b) A lien under this section attaches only if, and to the extent that, under a specific

land Rule of Civil Procedure 2–652(b),[12] the Firm notified the MREC and Abbasi of its claim to an attorney's lien in the amount of $134,749.94. The MREC's interpleader suit, ultimately removed to this Court by Abbasi, followed.

The Law Firm claims to have logged over 900 hours of uncompensated attorney time representing the Estate and Abbasi.[13] It seeks $134,749.94 (which includes the $76,610.35 already approved by the Montgomery County Orphans' Court, plus interest at 18% per annum plus disbursements).[14] Abbasi, who apparently never objected to the manner in which the Firm handled the legal affairs of the Estate, has refused any and all payment.

The matter is before the Court on a number of motions, but principally the Estate's Motion for Summary Judgment.

## II.

The parties make several arguments as to why each is entitled to the disputed funds. The Estate argues that the Law Firm should not receive the fees because, among other things, the Montgomery County Orphans' Court's orders awarding the fees are void *ab initio*. The Estate reasons that, because the Orphans' Court

ultimately concluded that it did not have primary jurisdiction over the Estate and because Maryland has purportedly abolished ancillary jurisdiction in probate cases, the court's orders are without effect. The Law Firm contends that the Orphans' Court's orders are enforceable and that it has a valid charging lien on the funds.

Because the nature of the relief sought appears to implicate the probate exception to federal diversity jurisdiction, the Court must determine whether it can properly adjudicate this action.

## III.

■ To begin, the Court considers the Estate's claim that the Montgomery County Orphans' Court's orders are void because Maryland has purportedly abolished ancillary estate administration. This argument is seriously flawed. Maryland may have "abolished" the need for a foreign personal representative to obtain local letters testamentary before exercising his power to transfer property located within this State. *See* Md.Code Ann., Est. & Trusts § 5–501 (2001) ("A foreign personal representative is not required to take out letters in the state."). It may also no longer be necessary for a foreign personal

agreement between an attorney at law and a client, the client owes the attorney at law a fee or other compensation for legal services that produced the settlement, judgment, or award.

. . .

(d) An attorney at law may retain property subject to a lien under this section and bring an action for execution under the lien only in accordance with rules that the Court of Appeals adopts.

Md.Code Ann., Bus. Occ. & Prof. § 10–501 (2000 & 2002 Supp.).

**12.** In relevant part, the Rule provides,

An attorney who has a [statutory] lien . . . may assert the lien by serving a written notice by certified mail or personal delivery

upon the client and upon each person against whom the lien is to be enforced. The notice shall claim the lien, state the attorney's interest in the action, proceeding, settlement, judgment, or award, and inform the client or other person to hold any money payable or property passing to the client relating to the action, proceeding, settlement, judgment, or award.

Md. R. Civ. P. 2–652(b).

**13.** The Law Firm's bills, attached to its pleadings, set forth its services in detail.

**14.** The MREC has disbursed to the Estate $33,676.52, the uncontested difference between what was recovered from the Fund and the amount that the Law Firm claims is subject to the lien.

representative to open an ancillary proceeding here. That proposition, however, is very different from saying that an ancillary proceeding may not be opened here or that maintaining such a proceeding is inappropriate in every case. Indeed, the Orphans' Court's venue statute specifically allows for Maryland administration to proceed when a decedent was not domiciled within the State. *See* Md.Code. Ann., Est. & Trusts § 5–103(a) (2001) ("The venue for administrative or judicial probate is ... if the decedent was not domiciled in Maryland, the county in which the petitioner believes that largest part in value of the property of the decedent in Maryland was located at the time of his death."). *See also Wright v. Nugent,* 23 Md.App. 337, 352–53, 328 A.2d 362, 371 (1974) (concluding that the Orphans' Court had jurisdiction to admit for probate a holographic will of a decedent domiciled in District of Columbia who owned real property in Maryland), *aff'd,* 275 Md. 290, 338 A.2d 898 (1975). Moreover, the Orphans' Court retains the power to "direct the conduct of a personal representative and pass orders which may be required in the course of the administration of an estate of a decedent," Md.Code Ann., Est. & Trusts § 2–102(a) (2001), and the statute regulating foreign personal representatives appears to grant such individuals no greater authority than that given to Maryland personal representatives. Md.Code Ann., Est. & Trusts § 5–502(b) (investing a foreign personal representative with "the same power to sell, mortgage, lease, convey, or otherwise transfer or assign real property or an interest in the property which is located in Maryland as a Maryland personal representative has with respect to real property and an interest in the property.").

Among other reasons why an ancillary proceeding may be appropriate notwithstanding that a decedent was domiciled elsewhere is precisely to permit attorneys located in this State to recover for services rendered with respect to property located here. In a case squarely on point, the Supreme Court of Arkansas held that, so long as the probate court has personal jurisdiction over the parties, that court has ancillary jurisdiction to make an award of attorney's fees for the administration of property located in Arkansas, despite the commencement of a primary probate proceeding in a foreign jurisdiction. *See Amant v. Callahan,* 341 Ark. 857, 20 S.W.3d 896, 899 (Ark.2000). There is no reason why the rationale of *Amant* should not apply in the present case.

Both the Estate and Athar Abbasi are subject to suit in Maryland. Md.Code Ann., Est. & Trusts § 5–502(a) ("Any foreign personal representative may exercise in Maryland all powers of his office, and may sue and be sued in Maryland, subject to any statute or rule relating to nonresidents."). Extensive property of the Estate, including multiple parcels of real estate, were or are located in Maryland. Athar Abbasi's predecessor personal representative and he, at least for a time, elected to go forward with an estate proceeding in Maryland relative to those properties. Abbasi engaged the Law Firm to provide extensive services to the Estate in Maryland, which it did, to the considerable benefit of the Estate. Abbasi personally concurred in the request to the Orphans' Court of Montgomery County to award the Law Firm more than $76,000 in fees. Now, many years after the fact, having paid little—if any—of those fees, he asks this Court to effectively require the attorneys to go to Pakistan to obtain approval of their fees, even those already awarded. It is hard to imagine a more compelling rationale for the holding in *Amant* than can be found in the present case. The Montgomery County Orphans' Court had jurisdiction over the matter of

the Firm's attorney's fees in this case and it still has such jurisdiction.

This conclusion, however, raises an issue that the parties have not addressed but which the Court must consider sua sponte: whether the probate exception to federal diversity jurisdiction prevents the Court from exercising jurisdiction over the attorney's fees issue. The Court finds that the exception applies in part and in part does not. The Court reviews the requirements for diversity jurisdiction and the nature and scope of the probate exception.

## IV.

■ For diversity jurisdiction to exist, there must be complete diversity of citizenship of the parties and the amount in controversy must exceed $75,000. 28 U.S.C. § 1332(a)(2) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of a State and citizens or subjects of a foreign state."). Those requirements are clearly met in the present case. The Law Firm's citizenship is in Maryland, the Estate's in Pakistan. 28 U.S.C. § 1332(c)(2) ("[T]he legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent ...."). But there is also the matter of the so-called probate exception to federal jurisdiction, which prevents a federal court from exercising diversity jurisdiction over "certain" probate matters. This exception has been previously described as "too well-established a feature of our federal system to be lightly discarded." *Markham v. Allen,* 326 U.S. 490, 494, 66 S.Ct. 296, 90 L.Ed. 256 (1946).

*Markham* is the leading case. There the Supreme Court considered whether an Alien Property Custodian, who had been vested with legal title to all property of the estate of a German decedent being administered in a California probate court, could maintain a federal action to prevent the estate's executor and legatees from making claims against the property. 326 U.S. at 492–93, 66 S.Ct. 296. After considering the prior cases implicating the probate exception, the Court established its parameters:

It is true that a federal court has no jurisdiction to probate a will or administer an estate, the reason being that the equity jurisdiction conferred [to it] ... [does] not extend to probate matters. But it has been established by a long series of decisions of this Court that federal courts of equity have jurisdiction to entertain suits in favor of creditors, legatees and heirs and other claimants against a decedent's estate to establish their claims so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court.

Similarly while a federal court may not exercise its jurisdiction to disturb or affect the possession of property in the custody of a state court, ... it may exercise its jurisdiction to adjudicate rights in such property where the final judgment does not undertake to interfere with the state court's possession save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court.

326 U.S. at 494, 66 S.Ct. 296 (quotations and citations omitted). In concluding that the federal district court had jurisdiction to entertain the matter, the Court relied primarily on the fact that that court's judgment had merely determined the Custodian's right to receive the net estate and had stopped short of ordering the executor to turn over the net estate, leaving "undis-

turbed the orderly administration of decedent's estate in probate court." *Id.* at 495, 66 S.Ct. 296.

Since *Markham,* "[a]s a general matter, courts tend to view the probate exception as extending to all suits 'ancillary' to the probate of a will." *Georges v. Glick,* 856 F.2d 971, 973 (7th Cir.1988) (citing *Dragan v. Miller,* 679 F.2d 712, 715 (7th Cir.1982)). Courts have also given content to *Markham*'s admonition that federal courts may not "assume [the] general jurisdiction of the probate." 324 U.S. at 494, 65 S.Ct. 807. Accordingly, they have looked to the exclusivity of the probate court's jurisdiction, considering whether the matter proceeding before the federal court, if brought in state court, would be relegated exclusively to the probate court as opposed to a court of general jurisdiction. If so, they have held the exception applicable. *See, e.g., Turja v. Turja,* 118 F.3d 1006, 1009 (4th Cir.1997) ("The law is well settled that the federal courts have no jurisdiction over matters within the *exclusive* jurisdiction of state probate courts.") (quoting *Foster v. Carlin,* 200 F.2d 943, 947 (4th Cir.1952)) (emphasis added); *Moser v. Pollin,* 294 F.3d 335, 341 (2d Cir.2002) (applying the exception when the cause of action "under state law ... would be cognizable only by the probate court."); *Bedo v. McGuire,* 767 F.2d 305, 306 (6th Cir.1985) (finding no jurisdiction over claim of breach of fiduciary duty where Ohio law vested exclusive jurisdiction within state court). *See also Sianis v. Jensen,* 294 F.3d 994, 998 (8th Cir.2002) ("Generally, where the dispute over the will would be cognizable only in a state probate court, a federal court is deprived of jurisdiction over the contest, and the aggrieved party must pursue the action in the probate court."); *Rienhardt v. Kelly,* 164 F.3d 1296, 1300 (10th Cir.1999) ("The standard for determining whether federal jurisdiction may be exercised is whether under state law the dispute would

be cognizable only by the probate court. If so, the parties will be relegated to that court; but where the suit merely seeks to enforce a claim inter partes, enforceable in a state court of general jurisdiction, federal diversity jurisdiction will be assumed.") (quoting *McKibben v. Chubb,* 840 F.2d 1525, 1529 (10th Cir.1988)); *Moore v. Graybeal,* 843 F.2d 706, 709 (3d. Cir.1988) ("[I]f a state authorizes interested parties to bring an *inter partes* action to annul a will or to set aside its probate independent of the probate proceedings and not incidental or ancillary thereto then, assuming there is diversity of citizenship and the requisite amount in controversy, a federal court has jurisdiction over the case.").

The United States Court of Appeals for the Fourth Circuit first embraced the exclusivity test in *Foster,* affirming that,

> [t]he law is well settled that the federal courts have no jurisdiction over matters within the exclusive jurisdiction of state probate courts. However, as to matters which do not involve administration of an estate or the probate of a will, but which may be determined in a separate action [*inter partes* ] in the courts of general jurisdiction of the state, the federal courts do have jurisdiction if the requisite diversity of citizenship exists.

200 F.2d at 947. The court went on to hold that the federal district court could adjudicate allegations of fraud surrounding the creation of certain trusts and settlement agreements concerning the transfer of stock owned by the decedent so long as the district court did not declare whether the decedent died intestate, the determination of which constituted a "probate matter" that only the state probate court could decide. *See id.* at 950. The court's reasoning rested, in large part, on the fact that, in Virginia at the time, only courts of general equity jurisdiction had authority to determine the validity of such agreements

and on the further ground that the probate courts were without the statutory authority to consider matters beyond admitting the will to probate and administering the estate. *See id.* at 949 (citing Virginia law).

More recently, the Fourth Circuit found that a federal district court lacked jurisdiction to adjudicate a claim between parties where state law relegated its resolution exclusively to the state probate court. In *Turja*, the district court had refused to exercise jurisdiction over a portion of a suit brought by two brothers against a third that questioned, in part, whether their mother, when she executed a will, a trust agreement and other related documents in favor of one son, lacked testamentary capacity and was unduly influenced. *See* 118 F.3d at 1007–08. The Fourth Circuit held that the district court lacked jurisdiction over those issues because, in Virginia, where the will was to be probated, jurisdiction to determine whether the decedent possessed testamentary capacity rested exclusively with the probate court. *See id.* at 1009. Implicit in the decision was the suggestion that the probate court, given its statutory authority and considerable expertise in the subject matter, was a more appropriate forum to litigate such claims; hence, the claims were not and should not be cognizable in the federal system. *See id.* at 1009–10.

*Turja* bears directly on the case at hand. In Maryland, the power to award attorney's fees for services rendered to an estate derives from statute. *See* Md.Code Ann., Est. & Trusts § 7–602; *see also Wolfe v. Turner*, 267 Md. 646, 653, 299 A.2d 106, 109 (1973); *Riddleberger v. Goeller*, 263 Md. 44, 55–58, 282 A.2d 101, 107–08 (1971). The attorney's fees are paid directly from the corpus of the estate, *see Riddleberger*, 263 Md. at 57, 282 A.2d at 108, and the decision to award them "is an exercise of discretion on the part of the orphans' court." *Beyer v. Morgan State Univ.*, 139 Md.App. 609, 629, 779 A.2d 388, 400 (2001) (citing *Wolfe*, 267 Md. at 653, 299 A.2d 106). Most significantly, the jurisdiction to approve these fees rests exclusively with the Orphans' Court. As the Maryland Court of Appeals has stated, an "attorney has no right to [the funds of the estate], either as a commission or as an attorney's fee, unless and until an approval pursuant to § 7–601 or § 7–602 ... has been obtained from the Orphans' Court." *See Attorney Grievance Comm'n v. Owrutsky*, 322 Md. 334, 344, 587 A.2d 511, 516 (1991). Indeed, this Court has not identified a single case in which a federal district court has awarded attorney's fees for services rendered to an estate when such fees have yet to be approved by the probate court. All authority appears to be quite to the contrary. *See Breaux v. Dilsaver*, 254 F.3d 533, 536 n. 4 (5th Cir.2001) (noting federal court lacked jurisdiction "to determine whether and to what degree [the administrator] is entitled to fees and expenses for administering [the decedent's] estate[; t]his is purely a probate matter for the state courts to decide"); *Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 703 (7th Cir.1992) (claiming no possibility of removal in action by law firm to recover attorney's fees against an estate because "federal courts do not have jurisdiction over probate matters"); *Law Offices of Sybil Shainwald, P.C. v. Goldberg & Goldberg*, No. 01–C–9076, 2002 WL 1821626, at * 5 (N.D.Ill. Aug.7, 2002) (finding probate exception inapplicable when fee dispute between law firms stemmed from fees already paid to one firm and "would not require any approval from the state court probate judge"); *see also Dannhardt v. Donnelly*, 604 F.Supp. 796, 800 (E.D.N.Y.1985) ("[T]he direction by this Court that defendant pay over to plaintiff the entire estate of Edith Campbell and any executor's fees

collected in connection with that estate, are obviously matters which fall exclusively within the probate court jurisdiction of the Surrogate's Court and over which this Court lacks subject matter jurisdiction.").

■ The Court, therefore, holds that the probate exception prevents it from making a specific award of attorney's fees in this case to the extent that such fees have not yet been approved by the Montgomery County Orphans' Court. That, however, is not the end of the matter.

### V.

■ Although the Court may be obliged to defer to the Montgomery County Orphans' Court to determine the exact amount of any as yet unawarded attorney's fees, this circumstance does not mean that the Court lacks jurisdiction over funds currently in its Registry of Court that might ultimately be applied toward such fees. The Court explains.

■ The Law Firm has duly filed an attorney's charging lien with respect to those funds. *See* Md.Code Ann., Bus. Occ. & Prof. § 10–501(a); Md. R. Civ. P. 2–652(b). Actions to enforce attorney's liens under the Maryland statute are within the general jurisdiction of the circuit courts. *See* Md. R. Civ. P. 2–652(c).[15] Hence, assuming the other requirements for the

diversity of citizenship are satisfied, the probate exception does not prevent removal to and adjudication by this Court. *See Foster*, 200 F.2d at 947 ("In each case the jurisdictional question can be decided by determining whether the action could be maintained in a state court of general jurisdiction in the state where the federal court sits.") (quotation and citation omitted). Moreover, the federal court, just as the circuit court, may rule upon the attorney's entitlement to the lien, attendant only upon a decision of the Montgomery County Orphans' Court to determine the actual amount of the claim.[16]

■ Although the Maryland statute does not address all particulars of a charging lien, general authority on the subject suggests its contours. A charging lien, which allows an attorney to be paid fees from the judgment he or she has helped procure, is designed "to protect the rights of an attorney unable to get possession against a client who seeks to avoid payment for services." 2 Robert L. Rossi, *Attorneys' Fees* § 12:13, at 12–23 & n. 10 (3d ed.2001) (citing *Robinson v. Rogers*, 237 N.Y. 467, 143 N.E. 647 (N.Y.1924)). As that authority summarizes,

> It has been held that a charging lien covers not merely disbursements made on behalf of the client included in the

---

**15.** When an action has been filed in Circuit Court, the Rule provides,

> If a lien asserted pursuant to this Rule relates to an action that has been filed in a circuit court of this State, on motion filed by the attorney, the attorney's client in the action, or any person who has received a notice pursuant to section (b) of this Rule, the court shall adjudicate the rights of the parties in relation to the lien, including the attorney's entitlement to a lien, any dispute as to the papers subject to a lien under section (a) of this Rule, and the amount of the attorney's claim.

Md. R. Civ. P. 2–652(c)(1).

**16.** The Maryland Rules of Procedure indicate that the circuit court can also determine "the amount of the attorney's claim." Md. R. Civ. P. 2–652(c)(1). Although at first blush this would seem at odds with the proposition that only the Orphans' Court can determine the amount of the attorney's fees in an estate case, Md.Code Ann., Est. & Trusts § 7–602; *Attorney Grievance Comm'n*, 322 Md. at 344, 587 A.2d at 516, no real inconsistency exists. The circuit court, under Rule 2–652(c), can obviously await the decision of the Orphans' Court with respect to the amount of the fee, and then enforce that court's award pursuant to the circuit court's general jurisdiction.

taxable costs, but also compensation for the services of the attorney. If the amount of the compensation was agreed upon, the attorney has a lien to that extent. If there was no specific agreement for compensation, he is entitled to reasonable compensation for his services, and he has a lien to that extent.

2 *id.* § 12:15, at 12–26 to –27 (footnotes omitted).

Rossi adds:

In the absence of a statute, a charging lien generally extends only to fees and disbursements rendered in the particular action in which the judgment was recovered; it does not cover any general balance that may be due the attorney from the client or charges for professional services rendered in other causes or transactions. However, in certain circumstances the charging lien may extend to charges for fees or disbursement in suits incident to, or growing out of, the principal object of the employment. The lien may also be extended to secure compensation for services rendered in other matters where there is a special contract or express agreement to that effect.

2 *id.* § 12:16, at 12–27 to –28 (footnotes omitted).

The Court accordingly accepts that in the present case, at a minimum, the Law Firm will be entitled to reasonable compensation and reimbursement for disbursements for services rendered in connection with recovering the funds from the MREC. Compensation for those services and disbursements may well cover the balance of compensation the Law Firm seeks in this case, apart from the $76,610.15 already approved by the Montgomery County Orphans' Court, i.e. $58,139.79. Enforcement of the lien to that extent, pending actual determination of the award by the Montgomery County Orphans'

Court, is fully justifiable. But the Court would note that, even if it eventuates that the compensation and reimbursements claimed by the Law Firm extend to services rendered to the Estate apart from the MREC proceeding, it is at least fairly arguable at this juncture that all services rendered by the Law Firm to the Estate were sufficiently interdependent that the assertion of a single lien to cover the multiple services would be appropriate. *See Skelton v. Spencer,* 102 Idaho 69, 625 P.2d 1072 (Idaho 1981); *In re Abruzzo,* 139 Misc. 559, 249 N.Y.S. 72 (1931).

The Court does not definitively decide that issue at this time since, if the entire balance of fees and disbursements sought turns out to be directly attributable to the MREC action, the decision would be academic. The Court will permit the parties to brief this issue at a later time. For now, it suffices to conclude that the lien has been fairly asserted against the full balance of the funds presently in the Registry of Court and that the Court will recognize the lien to that extent until such time as the Montgomery County Orphans' Court acts to fix the final award.

VI.

 The matter of this Court's jurisdiction over the claim for fees already approved by the Orphans' Court, the $76,610.15, is easily answered. In exercising jurisdiction over that claim, this Court will in no way intrude upon the province of the Montgomery County Orphans' Court for the simple reason that that court has already acted with respect to those fees. The court's order is final. Accepting jurisdiction in this regard accords fully with the distinction recognized in *Markham. See Ingersoll v. Coram,* 211 U.S. 335, 360, 29 S.Ct. 92, 53 L.Ed. 208 (1908) (finding federal jurisdiction in a suit to enforce an attorney's lien upon certain distributive

shares belonging to an estate after the fees were awarded by the probate court because "administrators and executors have a right to have their accounts adjusted and the amounts due to or from them determined in the probate court, on its probate side, and in the usual probate proceedings; but, when the amount for which they are liable is so determined, may, by a bill in equity, be compelled to pay to those entitled their share of the property of the deceased. And this being the power of the courts of equity of the state, a like power certainly may be exercised by the Federal courts."); *see also Waterman v. Canal–Louisiana Bank & Trust Co.,* 215 U.S. 33, 43–44, 30 S.Ct. 10, 54 L.Ed. 80 (1909) (concluding that a federal court may "exercise original jurisdiction in favor of creditors, legatees, and heirs, to establish their claims and have a proper execution of the trust as to them … notwithstanding the statutes of the state undertake to give to state probate court exclusive jurisdiction over all matters concerning the settlement of accounts of executors and administrators in the distribution of estates"). Such action, in short, would not affect the "orderly administration of [the] decedent's estate in probate court." *Markham,* 326 U.S. at 495, 66 S.Ct. 296.

The Court concludes that it has jurisdiction over the Law Firm's claim for attorney's fees already approved by the Orphan's Court and will proceed to adjudicate that claim.

### VII.

Summing up, the Court holds that:

1) It has jurisdiction to entertain the Law Firm's claim for fees already approved by the Montgomery County Orphans' Court, namely $76,610.15;

2) It does not have jurisdiction to award the balance of fees or costs sought, namely $58,139.79, since entitlement to those fees and costs has not yet been established by the Montgomery County Orphans' Court;

3) This Court does, however, have jurisdiction to recognize the Law Firm's charging lien with respect to further fees and costs that may be due and that may be awarded by the Montgomery County Orphans' Court and may recognize the Law Firm's charging lien asserted against the funds presently in this Court's Registry.

Accordingly, the suit will proceed in this Court with respect to the Law Firm's claim for the $76,610.15.[17] At the same time, the Court will retain in the Registry of Court the balance of the funds, $58,139.79, against which the Law Firm's charging lien has attached, pending further Order of the Montgomery County Orphans' Court. Thereafter, to the extent that the Orphans' Court might make a further order with respect to fees and costs, this Court will entertain the Law Firm's action to enforce payment of those fees and costs.

The effect of this decision is that the Estate's Motion for Summary Judgment will be DENIED. The Court will GRANT the Law Firm's Motion to Compel Deposition Testimony of Abbasi and DENY the Estate's Motion to Exclude Expert Evidence and the Estate's Motion for Protective Order. The Court will GRANT the Estate's Motion to Dismiss Cross–Claim and Abbasi's Motion to Dismiss the Law Firm's Third Party Complaint and DENY the Law Firm's Motion to Add Athar Abbasi as a Necessary Party Defendant.[18]

---

17. This claim may be appropriate for disposition by way of summary judgment.

18. Insofar as it appears that Athar Abbasi is a citizen of Maryland, as is the Law Firm, adding him as a defendant in these proceedings

A separate Order will ISSUE implementing this Amended Opinion.

### AMENDED ORDER

For the reasons set forth in the accompanying Amended Opinion, it is, this 1st day of May, 2003,

ORDERED:

(1) Defendant's Motion for Summary Judgment [Paper No. 9] is DENIED.

(2) Plaintiff and Cross–Claimant's Motion to Add Necessary Party Defendant [Paper No. 16] is DENIED;

(3) Defendant's Motion to Dismiss Cross–Claim [Paper No. 24] is GRANTED;

(4) Third Party–Defendant Athar Abbasi's Motion to Dismiss Plaintiff's VanGrack, Axelson & Williamowsky's Third–Party Complaint [Paper No. 31] is GRANTED;

(5) Defendant Estate of Mehru Abbasi's Motion to Exclude Expert Evidence Proffered by Plaintiff VanGrack, Axelson & Williamowsky [Paper No. 32] is DENIED;

(6) Defendant's Estate of Mehru Abbasi's Motion for Protective Order [Paper No. 43] is DENIED, and

(7) Plaintiff's Motion to Compel Deposition Testimony of Athar Abbasi [Paper No. 45] is GRANTED.

would destroy the Court's diversity jurisdiction. It is true that interpleader actions such as this require only minimal diversity among claimants and that it is ordinarily sufficient if any two claimants to the funds are citizens of different states. *See State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967). However, Abbasi has not asserted a claim to the fund in his individual capacity; hence, he is not covered by the interpleader rule.

Because the Law Firm seeks to sue Abbasi in his individual capacity and because diversity is the basis for federal jurisdiction as to that claim, it must exist between the Law Firm and Abbasi as of the time leave to add the party is sought. *See, e.g., Lewis v. Lewis*, 358 F.2d 495, 502 (9th Cir.1966).