Charles AMANT *v.* George M. CALLAHAN

99-1009                                        20 S.W.3d 896

Supreme Court of Arkansas
Opinion delivered July 7, 2000

*Vicki Shaw Cook*, Judge;

*Wright, Lindsey & Jennings LLP*, by: *H. Keith Morrison*, for appellants.

*Terry P. Diggs*, for appellee.

LAVENSKI R. SMITH, Justice. This is a probate case. Appellants Charles and Muriel Amant, as estate devisees, assert that the Garland County probate court erroneously granted fees to the administrator, the estate attorney, and estate accountants. Appellants contend that the Full Faith and Credit Clause of the U.S. Constitution as well as the doctrine of res judicata preclude the award of fees because they had been previously sought and denied in an Oklahoma probate court. They also assert that the trial court erred in granting these fees because they are excessive under the statutes, and because they were untimely sought under the applicable statutes. We find merit in appellant's Full Faith and Credit argument and, accordingly, reverse.

*Facts*

In 1984, Tude Mitchell Ray, a lifelong Oklahoma resident, moved to Garland, County, Arkansas, at the age of eighty-one. Over the course of his long life, Mr. Ray amassed a sizeable estate valued in excess of one million dollars despite being illiterate. From 1929 until the early 1940's he acquired approximately 1,722 acres of land and mineral rights in Oklahoma. Mr. Ray had twelve children. In 1983, nine of his children commenced an action in Oklahoma to have him declared incompetent to handle his affairs. Two of his children, Muriel Amant and Gus Ray, cared for Mr. Ray during the pendency of the incompetency proceedings. They did not live in Oklahoma, but rather in Missouri and Arkansas, respec-

tively. After coming to Arkansas, Mr. Ray retained the services of Attorney George M. Callahan of Hot Springs to represent him in the incompetency proceedings in Oklahoma. Callahan succeeded, and on May 2, 1986, the Oklahoma Court of Appeals overturned the Oklahoma District Court's finding of incompetency, and instructed the district court to dismiss the proceeding.

Apparently, in May 1985, Callahan drafted a will for Mr. Ray. The will listed Callahan and a Mr. Meacham of Clinton, Oklahoma as coexecutors. Mr. Ray's will left his estate to his sons Gus and Peter, and his daughter Muriel. The will excluded the nine children involved in the incompetency proceedings, provided for $60.00 per month for Pete Ray, granted Muriel Amant mineral rights in what is referred to as the "Section 32 property," and granted the residue to Gus Ray. However, prior to having Callahan draft his will in 1985, Mr. Ray had already transferred the "Section 32 property" to Muriel, and additional mineral rights to Muriel's husband Charles in 1984.

On August 22, 1986, Tude Mitchell Ray died testate at the age of eighty-three in Hot Springs. On that same day, Callahan entered the will in probate. At the time of his death, Mr. Ray owned a house and a small amount of personal property in Arkansas. However, the bulk of his 1.3 million dollar estate consisted of real property and real-property interests in Oklahoma, where he had lived almost all of his life. Thus, the domiciliary probate case was established in Arkansas. Pursuant to the will, the probate court appointed Callahan personal representative for the estate. Callahan charged the estate $125.00 per hour for his services as personal representative. Callahan, although an attorney himself, retained Charles Lincoln as attorney for the estate. Lincoln also charged $125.00 per hour for his services. Additionally, Callahan also retained an accounting firm to handle the finances of the estate. In the course of the probate process, substantial accounting fees were paid to Luebben and Associates, the accounting firm hired by Callahan.

On September 1, 1987, a mortgagee on some Oklahoma estate property filed an ancillary probate action in Custer County, Oklahoma. At some point, the Oklahoma court substituted Callahan as a co-personal representative in the ancillary action There were also two actions to compel return of the property transferred to Muriel and Gus in 1984, ostensibly to avoid gift taxes that would have to be paid otherwise. On June 15, 1988, LaVone Keeton, one

of the excluded children, challenged the will in the district court in Oklahoma, asserting she had a valid will bequeathing the "Section 32 property" to her. The matter was litigated, and Callahan prevailed, bringing this matter to an end in 1989. On November 21, 1988, Charles and Muriel Amant and Gus and Roberta Ray entered into a "Family Settlement Agreement," to resolve their disputes with Callahan.

The record reflects that even following the execution of the Family Settlement Agreement, the estate continued to languish in the courts. Callahan first submitted an inventory for the estate in 1992. The vast majority of the legal proceedings occurred in Oklahoma where Mr. Ray owned the bulk of his property. During the course of the probate proceedings, and for reasons unstated in the record, Callahan comingled the funds of the domiciliary and ancillary probate proceedings. This apparently led to some consternation on the part of the Oklahoma probate court as to the handling of the estate. The devisees and the executor battled extensively over aspects of the probate, but after approximately seven years, the Oklahoma proceedings wound down.

On July 23, 1993, Callahan filed his Final Account and Petition to close out the ancillary probate in Oklahoma. Callahan included requests for $36,827.87 in personal representative's fees for "services rendered in the probate proceeding pending in Garland County, Arkansas and the ancillary probate proceeding before this Court"; $8,808.11 for attorney's fees to the law firm of Lincoln and Lawson; and $11,730.00 for accounting services to Luebben and Associates. On December 16, 1994, Oklahoma Probate Judge Robert W. Collier issued his order approving the final account and closing the ancillary probate. In his order, Judge Collier declined to pay all the fees requested by Callahan's petition. Instead, Judge Collier ordered that Callahan's fees for administering the estate had been paid already by his receipt of $70,000 from the probate court of Garland County. Judge Collier transferred $8,808.11 to Arkansas to pay Lincoln and Lawson and awarded Luebben and Associates only $8,000 of its requested fees. No one appealed the order of the Oklahoma probate court.

Interestingly, during the pendency of the Oklahoma proceeding, Callahan filed a "Petition for Allowance and Payment of Fees to Attorneys and Accountants for the Estate" on March 29, 1994, seeking many of the same fees previously sought in Oklahoma. After much litigation, the Garland County Probate Court granted

Callahan's petition on September 10, 1996. The Court found the fees sought were the same fees sought in Oklahoma, with the exception of $9,355.18 sought in additional fees. No one appealed this finding. The probate court also found Lincoln had already received the $8,000.00 transferred by the Oklahoma probate court and then granted Callahan $22,184.23, Lincoln $15,280.10, and Luebben and Associates $18,545.55. Because the estate assets had been depleted, Callahan then sought and received an order from the court requiring the Amants to return a portion of the estate assets distributed to them to enable the estate to pay the fees ordered. The court entered this order on April 16, 1999. The Amants objected and timely initiated the instant appeal after the court issued its Order of Final Distribution and Closing Estate on August 10, 1999.

## Standard of Review

We review probate proceedings de novo, and we will not reverse the decision of the probate court unless it is clearly erroneous. *Buchte v. State*, 337 Ark. 591, 990 S.W.2d 539 (1999); *Barrera v. Vanpelt*, 332 Ark. 482, 965 S.W.2d 780 (1998). When reviewing the proceedings, we give due regard to the opportunity and superior position of the probate judge to determine the credibility of the witnesses. *Babb v. Matlock*, 340 Ark. 263, 9 S.W.3d 508 (2000).

## Full Faith and Credit

On appeal, the Amants assert that the Arkansas fee awards are precluded to the extent they were previously denied in Oklahoma due to the operation of the Full Faith and Credit Clause of the United States Constitution. In response, Callahan argues that the Oklahoma court lacked jurisdiction to issue its order. We agree with the Amants and reverse the probate court on the award of fees denied by the Oklahoma probate court.

Our analysis begins with the express finding of the trial court below that many of the fees at issue consisted of fees expressly denied by the Oklahoma probate court in the ancillary proceeding. Appellees acknowledge that they did not appeal the findings of the Oklahoma or the Arkansas probate courts respecting requested fees. The State of Arkansas must give full faith and credit to foreign judgments under the U.S. Constitution. U.S. Const. art. 4, § 1; *see also*, Ark. Code Ann. § 16-66-602 (Supp. 1995) and *First Commer-*

*cial Trust Company v. Rank*, 323 Ark. 390, 915 S.W.2d 262 (1996). Full faith and credit applies to probate proceedings as well. *Gocio v. Gocio.* 206 Ark. 579, 177 S.W.2d 742 (1944). The doctrine of res judicata also applies. Where a party subjects itself to the jurisdiction of a foreign court on an issue, the decision by that court on that issue is not subject to collateral attack in Arkansas courts. *Monark Boat Co. v. Fischer*, 292 Ark. 544, 732 S.W.2d 123 (1987).

Both parties cite the case of *Estate of Torian v. Smith*, 263 Ark. 304, 564 S.W.2d 521 (1978), as supportive of their positions and determinative on the issue of Full Faith and Credit. The parties are correct. *Torian* does state the relevant law in this matter. In *Torian*, the decedent, Lula Torian, died testate while an Arkansas resident. Her executor, the First National Bank of Memphis, opened a probate proceeding in Mississippi where she owned about 900 acres of real property valued at $1,000 per acre. The executor also began a probate proceeding in Arkansas to handle the decedent's personal property in Arkansas, which approached one-half million dollars. The Arkansas court ordered that the assets in Arkansas would be administered according to Arkansas law and the assets in Mississippi would be administered according to Mississippi law. The executor then sought to withdraw the probate of the will in Mississippi and transfer the same to the Arkansas probate court in Crittenden County. The Mississippi court denied the petition and was affirmed by the Mississippi Supreme Court. The executor sought to charge estate-tax expenses against the personal property assets in Arkansas. The residuary beneficiaries defended contending Arkansas law had not been followed in apportioning the taxes in the Mississippi proceedings. The executor contended that since Mississippi had exercised personal jurisdiction over the beneficiaries, they were bound by the orders of the Mississippi court. We, however, declined to extend full faith and credit to the Mississippi order, holding instead that only Arkansas had in rem jurisdiction over the Arkansas assets of the estate. The Mississippi judgment was only entitled to full faith and credit in Arkansas only as far as it concerned property in Mississippi.

In the instant case, the orders of the probate court in Oklahoma concerned disposition of the real property located in Oklahoma over which only the Oklahoma court had *in rem* jurisdiction. It is undisputed that the Oklahoma court also had personal jurisdiction over the parties. We therefore hold that the orders of the Oklahoma probate court concerning fees to the executor, attor-

ney, and accountant for the estate are entitled to full faith and credit under the United States Constitution and are therefore impervious to collateral attack in Arkansas state courts. The Orders of the Garland County Probate court granting payment of fees previously denied by the Oklahoma Probate are clearly erroneous and are hereby reversed.

### Remaining Fees

■ Disallowing those fees denied in the Oklahoma proceeding leaves at issue approximately $9,355.18 in additional fees sought and awarded in Arkansas. We note that the probate court's order grants the fees without comment as to why the statutory amounts set out in Ark. Code Ann. § 28-48-108(a)(1987) were exceeded in this case. Subsection (b) of § 28-48-108 indicates that in exceeding the statutory amounts, the probate court should take into account "the nature and extent of the services, the extent and value of real property, and other relevant circumstances." Undoubtedly, disallowing the fees denied in Oklahoma has changed that evaluation. Also, the trial court's pro rata distribution to Callahan, Lincoln, and Luebben of the estate's $16,342.98 should be reassessed in light of this opinion. We therefore remand this case for the probate court to address the appropriateness of any additional fee award under this statute.

Appellant's final issue concerned the timeliness of the fee requests. Because the funds transferred to the Arkansas proceedings by the Oklahoma court exceed the remaining $9,355.18 in fees, should they be granted, there is no need to discuss whether the order to return prior distributions was timely. We remand for entry of amended orders consistent with this opinion.

Reversed and remanded.