Andra DILLARD, Annette Barry, and
Joseph Nichols Dillard, Jr. *v.* George NIX

00-1454                                        45 S.W.3d 359

Supreme Court of Arkansas
Opinion delivered June 7, 2001

*Frances Morris Finley,* for appellant.

*Dover & Dixon, P.A.,* by: *Monte D. Estes,* for appellee.

RAY THORNTON, Justice. Grace Marie Nix executed a will on February 2, 1979, and the will was attested on that date by the attorney who prepared the will and by his secretary. A codicil was added to the will on April 11, 1989, and the codicil was also witnessed by Eugene Fitzhugh, the attorney who prepared the will, and by his secretary Sheila Eoff White. Following Ms. Nix's death, her surviving spouse, George Nix, appellee, offered the will and its codicil for probate on November 9, 1999.

Appellants, Andrea Dillard, Annette Barry, and Joseph Dillard, Jr., Ms. Nix's children from a previous marriage, contested the validity of the will and its codicil on two grounds. Appellants argued that the witnesses who signed the attestation clauses did not have a sufficient recollection of the execution of the documents. Appellants also argued that even if the will and codicil were properly executed, Ms. Nix, by making numerous marks and interlineations on portions of the will expressed her intention to revoke the will and codicil.

The probate court conducted a hearing on the matter and found that the will and the codicil were valid and that the markings on the will did not reflect an intention to revoke the will, but rather, because the markings were not witnessed, they were of no legal significance and should not be considered as having any effect. Accordingly, the probate court ordered that the will and codicil be admitted to probate and appointed George Nix as personal representative of Ms. Nix's estate. It is from this order that appellants bring this appeal, and we affirm the probate court.

We review probate proceedings *de novo,* and we will not reverse the decision of the probate court unless it is clearly erroneous. *Amant v. Callahan,* 341 Ark. 857, 20 S.W.3d 896 (2000). When reviewing the proceedings, we give due regard to the opportunity

and superior position of the probate judge to determine the credibility of the witnesses. *Id.*

In their first point on appeal, appellants argue that Ms. Nix's will should not have been admitted to probate because appellee failed to prove that the will had been properly executed. Specifically, appellants argue that appellee failed to prove that the attesting witnesses remembered witnessing the will. Arkansas Code Ann. § 28-25-103 (1987) articulates the procedure to be followed when executing a will. The statute provides:

> (a) The execution of a will, other than holographic, must be by the signature of the testator and of at least two (2) witnesses.
>
> (b) The testator shall declare to the attesting witnesses that the instrument is his will and either:
>
> (1) Himself sign; or
>
> (2) Acknowledge his signature already made; or
>
> (3) Sign by mark, his name being written near it and witnessed by a person who writes his own name as witness to the signature; or
>
> (4) At his discretion and in his presence have someone else sign his name for him. The person so signing shall write his own name and state that he signed the testator's name at the request of the testator; and
>
> (5) In any of the above cases, the signature must be at the end of the instrument and the act must be done in the presence of two (2) or more attesting witnesses.
>
> (c) The attesting witnesses must sign at the request and in the presence of the testator.

*Id.* Arkansas Code Ann. § 28-40-117 (1987) explains the procedure whereby a party proves the validity of an attested will. The statute in relevant part states:

> (a) An attested will shall be proved as follows:

(1) By the testimony of at least two (2) attesting witnesses, if living at known addresses within the continental United States and capable of testifying; or

(2) If only one (1) or neither of the attesting witnesses is living at a known address within the continental United States and capable of testifying, or if, after the exercise of reasonable diligence, the proponent of the will is unable to procure the testimony of two (2) attesting witnesses, in either event the will may be established by the testimony of at least two (2) credible disinterested witnesses. The witnesses shall prove the handwriting of the testator and such other facts and circumstances, including the handwriting of the attesting witnesses whose testimony is not available, as would be sufficient to prove a controverted issue in equity, together with the testimony of any attesting witness whose testimony is procurable with the exercise of due diligence.

\* \* \*

(d) The provisions of this section as to the testimony of subscribing witnesses shall not exclude the production of other evidence at the hearing on the petition for probate, and the due execution of the will may be proved by such other evidence.

*Id.*

■ In the case now on review, two people signed an attestation clause, stating that they had witnessed Ms. Nix acknowledge and sign her will. The testimony of both attesting witnesses was presented at the hearing on appellee's petition. We conclude that the testimony of the two attesting witnesses was sufficient to prove the validity of the will. Specifically, Eugene Fitzhugh testified that he had drafted a will for Grace Nix in 1979. He testified that he remembered both Grace Nix and George Nix coming into his office on the day Ms. Nix requested that the will be drafted. Mr. Fitzhugh stated that he witnessed Ms. Nix sign her will and that he witnessed his secretary, Sheila White, sign Ms. Nix's will. He further stated that the procedure followed by his office during the execution of a will was as follows: "[T]he client would sign ... well, first I would call the secretary into the ... to my office. The client would sign the will and then we, my secretary and myself would witness the will." Mr. Fitzhugh also testified that he had stated in an earlier deposition that he did not remember the circumstances surrounding the signing of Ms. Nix's will. However, he further stated that after reviewing his files, he was able to recall the circumstances

surrounding the execution of Ms. Nix's will on the day of the hearing on appellee's petition. Mr. Fitzhugh testified that he would not have acted as a witness on Ms. Nix's will without having seen Ms. Nix sign it first. He further stated that he remembered Ms. Nix coming into his office in 1989 and asking him to add the codicil to the will. Mr. Fitzhugh testified that he wrote the codicil on the will and that he and Ms. White signed the codicil as witnesses.

The testimony of Sheila White was also admitted in evidence. She stated that she had worked for Mr. Fitzhugh for six or seven years starting in 1977 and that she had often served as an attesting witness. She stated that the procedure that they always followed was to attest the will after the testator signed the will. Ms. White further stated that she could not specifically recall the circumstances surrounding the signing of Ms. Nix's will in 1979. However, she noted that her signature was on the will and stated that she would not have signed her name as an attesting witness unless she had seen the testator sign the document. With regard to the codicil, Ms. White testified that while she did not specifically recall the circumstances surrounding the execution of the codicil, she would not have signed her name if she had not seen Ms. Nix sign the codicil on April 11, 1989. Ms. White further stated that although she did not have independent recollection of seeing Ms. Nix execute the will or the codicil, she was sure that the execution had been properly performed because it was her signature on the codicil, and at the time the will and codicil were executed, she was a notary public and she "never ever signed anything without seeing the person sign it."

After hearing the testimony of Mr. Fitzhugh and Ms. White the probate judge found:

> that based on the testimony of the attesting witnesses, Eugene Fitzhugh and Sheila Eoff White, the court finds that ... the proponent of admission to probate of the original will and the codicil has met his burden of proving that the original will and codicil had been executed in all respects according to law when the decedent was competent to do so and acting without undue influence, fraud, or restraint, and has not been revoked.

■ After reviewing the applicable statutory provisions and the facts surrounding the execution of Ms. Nix's will, we conclude that the trial court did not err in ruling that appellee satisfied the requirements outlined in Ark. Code Ann. § 28-40-117(a)(1) for proving an attested will by the testimony of two attesting witnesses. The two attesting witnesses were credible disinterested witnesses.

Mr. Fitzhugh and Ms. White each testified that his or her signature was on Ms. Nix's will as attesting witnesses. In addition to this proof that they had attested to the validity of the will, Mr. Fitzhugh was able to provide testimony regarding the circumstances surrounding Ms. Nix coming into his office and asking him to draft the will and later the codicil. He also testified that he and his secretary routinely acted as witnesses to wills prepared for his clients and that they would not sign the document until the testator had signed the will and requested that they attest it. Ms. White testified that she would not have acted as a witness to the will or codicil if they had not been properly executed. Accordingly, we cannot say that the probate judge's finding that Ms. Nix's will and codicil were properly executed and attested as required by law was clearly erroneous.

■ Appellants urge that in *Estate of Sharp*, 306 Ark. 268, 810 S.W.2d 952 (1991), we established an additional requirement that disinterested witnesses called upon to prove a will must remember the exact circumstances surrounding the execution of the will, and contend that because the witnesses in the present case do not have such a detailed recollection, Ms. Nix's will and codicil should not have been admitted to probate. Appellants' assertion is incorrect. In *Sharp*, the will did not contain an attestation clause and the probate court admitted it into probate based on the testimony of one disinterested witness. We held that admission of the will into probate was erroneous based on the requirement of Ark. Code Ann. § 28-40-117. *Sharp, supra*. In the present case, Ms. Nix's will was attested by two witnesses, who each signed an attestation clause acknowledging the proper execution of the will in compliance with the statute. The facts in *Sharp* are inapposite to the facts in the case now on review.

In their second point on appeal, appellants argue that Ms. Nix's will should not have been admitted into probate because she revoked the document prior to her death. Specifically, appellants argue that the "cross-throughs," "interlineations," and "mark-outs" on the face of the document was an attempt by Ms. Nix to revoke her will by obliteration. Arkansas Code Annotated § 28-25-109 (1987) explains the process whereby a will may be revoked. The statute provides in part:

(a) A will or any part thereof is revoked:

(1) By a subsequent will which revokes the prior will or part expressly or by inconsistency; or

(2) By being burned, torn, cancelled, obliterated, or destroyed, with the intent and for the purpose of revoking it by the testator or by another person in his presence and by his direction.

* * *

(c) Where there has been a partial revocation, reattestation of the remainder of the will shall not be required.

*Id.*

On this issue the probate judge found:

That it is the further finding of this court that no proof was adduced that any of the interlineations, correction or markings found on the face of the original will were placed there with any intent to revoke the original will, and that said interlineations, corrections and markings, having not been witnessed or attested, are of no legal significance.

█ We cannot say that the probate judge's findings were clearly erroneous. The changes to the will made by Ms. Nix were of no legal significance. Ms. Nix made several marks on her will. However, appellants have failed to prove that Ms. Nix's changes met the requirement of Ark. Code Ann. § 28-25-109 for revocation of her will because appellants did not establish that Ms. Nix intended to revoke her will by obliteration. Appellants argue that the fact that there were at least twenty-five interlineations and marks on the will indicates that Ms. Nix intended to revoke her will by obliteration. Appellant Barry testified that "my mother made some of those mark-throughs or changes while I was present. It was my impression that my mother was intending to revoke this will. She was unclear about what she wanted at the time. She was using this as sort of a work in progress." The impact of this testimony was diminished by Ms. Barry's additional testimony in which she stated that there "was an understanding between her [Ms. Nix] and George that they both have wills when they married and that is what they did." The trial court concluded that the markings on the will did not support a finding that Ms. Nix intended to revoke her will. We conclude that the trial court's finding was not clearly erroneous.

Affirmed.