Caroline Sue RAY *v.* Roy Thomas SELLERS
and Wanda Sue Sellers

CA 02-981                                         120 S.W.3d 134

Court of Appeals of Arkansas
Divisions I and II
Opinion delivered June 18, 2003

*Pamela Fisk*, for appellant.

*Keil & Goodson*, by: *John W. Goodson*, for appellee.

JOSEPHINE LINKER HART, Judge. Appellant, Caroline Sue Ray, appeals from the circuit court's decree of adoption, which terminated her parental rights to her minor daughter and granted the adoption of the child by appellees, Roy Thomas and Wanda Sue Sellers. Appellant argues in part that the circuit court erred in finding that her consent to the adoption was not required. We agree with appellant, and without addressing her other allegations of error, we reverse.

The facts are as follows: Appellant was incarcerated in the Arkansas prison system when, on April 23, 1999, she gave birth to her daughter. Appellee Wanda Sellers testified that after the child was two months old, she began caring for the child for two days every week. She further testified that the child lived with the child's grandmother for a month, lived with an aunt for two months, and then lived with her and her husband.[1] Wanda Sellers admitted that when the child first began living with them, they did not expect to adopt her; she talked to appellant and understood that the child would be returned to appellant upon her release from prison. Appellee Roy Sellers likewise testified that when the child first came to live with them, it was his understanding that the child would live with appellant after she was released from prison.

On March 28, 2000, appellant became eligible for parole, and on April 4, 2000, appellees filed for guardianship of appellant's daughter. On June 6, 2000, appellant was released from the Arkansas prison, and according to appellees' petition for adoption, Wanda Sellers was appointed guardian on August 29, 2000. Wanda Sellers testified that she and her husband were allowed to set appellant's visitation with the child. She further testified that appellant could only visit her daughter once a month because of her parole requirements, and appellees allowed appellant to see her daughter once on Saturday and once on Sunday. Wanda Sellers did not allow appellant to be alone with the child for fear that appellant would take the child. Roy Sellers testified that even after obtaining the guardianship, he anticipated that the child would live with appellant upon termination of the guardianship.

Appellant remained out of prison until April 14, 2001, when she was arrested by Texas authorities. According to Wanda Sellers, it was her understanding that appellant had not done anything wrong when she was arrested, but she had been picked up because of a charge for which she had been serving time in Arkansas. According to appellant, she was arrested on a "premature release

---

[1] We note that this testimony is contradicted by (1) appellant's testimony that the child lived with her aunt for six or seven months; and by (2) appellees' verified amended petition for adoption in which appellees stated that the child had resided with them since October 1999.

warrant." Wanda Sellers took the child to see appellant when appellant was first arrested.

While Wanda Sellers had placed a block on her telephone to preclude appellant from calling from the prison, she was contacted by appellant's friend about allowing appellant to see the child while appellant was in prison. However, because of her work schedule, she could not take the child to see appellant. Wanda Sellers also testified that the child had been receiving cards and letters from appellant after the petition for adoption, which was filed on January 15, 2002, and amended on January 24, 2002.

Wanda Sellers stated that appellant had contributed a maximum of $350 for the care of the child. She recognized, however, that appellant was unable to support the child while appellant was in prison, and she testified that when appellant was out of prison, she furnished clothes and shoes for the child and three $50 money orders.

In the decree of adoption, the circuit court found that the child had lived with a maternal aunt for approximately two months, a maternal grandmother for approximately one month, and with appellees for two years and nine months. The court noted that appellant, after she was paroled from the Arkansas prison, contributed less than $350 for the support of the child over a ten-month period. The court further observed that appellant had four and one-half years remaining on her prison sentence and would be able to apply for parole in 2004. The court concluded that the adoption was in the best interest of the child and that there had "not been substantial contact or contribution of support by the natural mother." The court consequently terminated appellant's parental rights and granted the adoption.

■■ Arkansas Code Annotated § 9-9-207(a)(2) (Repl. 2002) provides in pertinent part that

> [c]onsent to adoption is not required of . . .[a] parent of a child in the custody of another, if the parent for a period of at least one (1) year has failed significantly without justifiable cause (i) to communicate with the child or (ii) to provide for the care and support of the child as required by law or judicial decree[.]

"Adoption statutes are strictly construed, and a person who wishes to adopt a child without the consent of the parent must prove that consent is unnecessary by clear and convincing evidence." *In re Adoption of Lybrand*, 329 Ark. 163, 169, 946 S.W.2d 946, 949 (1997). We review adoption proceedings de novo, and the trial court's decision will not be disturbed unless clearly erroneous, giving due regard to the opportunity and superior position of the trial court to determine the credibility of the witnesses. *Vier v. Vier*, 62 Ark. App. 89, 93, 968 S.W.2d 657, 659 (1998).

A failure to communicate without justifiable cause is one that is voluntary, willful, arbitrary, and without adequate excuse. *In re Adoption of Lybrand*, 329 Ark. at 169-70, 946 S.W.2d at 950. It is not required that a parent fail totally in these obligations in order to fail significantly within the meaning of the statutes. *Id.* at 170, 946 S.W.2d at 950. The one-year period after which a parent may lose the right to consent must accrue before the filing of the adoption petition, and the filing of the petition is the cutoff date. *In re Adoption of K.F.H.*, 311 Ark. 416, 420, 844 S.W.2d 343, 345 (1993). The one-year requirement applies to any one-year period between the date of the child's birth and the date the petition for adoption was filed and is not limited to the year immediately preceding the filing of the adoption petition. *Id.*

Here, the court concluded that there had "not been substantial contact or contribution of support by the natural mother." We conclude that the court's decision to grant the adoption was clearly erroneous, as there was no evidence that appellant's alleged failure to significantly communicate with her child or to provide for the care and support of her child was for a one-year period.

Appellees began caring for the child three months after her birth. Appellant was incarcerated until June 6, 2000. She remained out on parole for approximately ten months until April 14, 2001, at which point she was again incarcerated. There is no testimony regarding appellant's communication or lack thereof with her child during the first three months of the child's life. Appellant did state that she had called her aunt because she was worried about the child and learned that her aunt had left the child with appellees. She then wrote to appellees and agreed to

give them a power of attorney. Wanda Sellers testified that after they began caring for the child, appellant spoke with them regarding the care of the child. Further, appellees presented no testimony regarding whether appellant failed to maintain contact with the child during her second incarceration. The only testimony regarding appellant's communication with her child relates to the ten-month period during which she was not incarcerated, which is two months short of a one-year time period. Further, as for appellant's duty to provide for the care and support of the child, Wanda Sellers acknowledged that appellant was unable to support the child while she was incarcerated. And the ten-month period during which she could contribute financially to the child was two months short of the one-year period.

As we previously noted, adoption statutes are strictly construed, and a person who wishes to adopt a child without the consent of the parent must prove that consent is unnecessary by clear and convincing evidence. While the circuit court found that there had "not been substantial contact or contribution of support by the natural mother," the court did not specify the time period during which the contact or contribution failed to occur. From our review of the record, we cannot say that the evidence established that any period of non-contact or non-contribution lasted for the statutorily mandated one-year period. Given this lack of evidence, we conclude that the circuit court's decision to grant the adoption was clearly erroneous.

Reversed.

BIRD, GRIFFEN, and ROAF, JJ., agree.

STROUD, C.J., and CRABTREE, J., dissent.

TERRY CRABTREE, Judge, dissenting. I am convinced that this case should be affirmed. The majority opinion failed to mention certain facts. Wanda Sellers testified that her brother, Joe White, is the child's biological father. At the time of the adoption hearing, White was incarcerated in Texas. He was not a party to this action. Appellant has been incarcerated in three states, Louisiana, Arkansas, and Texas. Upon her release from prison in Arkansas, appellant moved to Texas. The trial court

found it significant that appellant chose to complete her parole in Austin, Texas, rather than in Arkansas where she would be closer to her child. During the ten months following appellant's release from prison in Arkansas, she visited the child under the supervision of appellees approximately ten times. Presently, appellant is incarcerated in Texas with her next possibility for parole in 2004. In 2004, the child will be five years old and will have lived with appellees for almost her entire life.

In August of 2000, the trial court granted guardianship of the child to appellees. Appellant testified that at that time, the trial court gave "appellees discretion whether I had visitation rights or not. We set up visitation of once a month because I lived in Austin, [Texas]." Appellant also testified that it was her "understanding that in talking with Ms. Sellers that when I got out of prison *and proved to her I could take care of Marissa they would have no problem in giving her back to me.*" (Emphasis added.) It seems obvious to me that appellant failed to demonstrate upon her release from prison that she was capable of caring for the child.

We review probate proceedings *de novo*, and we will not reverse the decision of the probate court unless it is clearly erroneous. *Dillard v. Nix*, 345 Ark. 215, 45 S.W.3d 359 (2001); *Amant v. Callahan*, 341 Ark. 857, 20 S.W.3d 896 (2000). Consent for adoption is not required of:

> A parent of a child in the custody of another, if the parent for a period of at least one (1) year has failed significantly without justifiable cause (i) to communicate with the child or (ii) to provide for the care and support of the child as required by law or judicial decree[.]

Ark. Code Ann. § 9-9-207(a)(2) (Repl. 2002). The one-year period may be any one-year period and need not immediately precede the filing of the adoption petition. *Vier v. Vier*, 62 Ark. App. 89, 968 S.W.2d 657 (1998). It is not required that a parent fail "totally" in these obligations in order to fail "significantly" within the meaning of the statutes. *Pender v. McKee*, 266 Ark. 18, 582 S.W.2d 929 (1979).

The trial court granted the adoption to appellees after finding that appellant had failed to provide for or contribute to the child

in over a year. I agree with the trial court. I also believe that appellant failed significantly to communicate with her daughter for over a year. With this in mind, I would hold that the trial court reached the right result for two different reasons.

First, appellant failed significantly to contribute financially to her child for over a year. The majority opinion recounts Wanda Sellers' testimony that she recognized that appellant was unable to support the child while appellant was in prison. It is undisputed that while incarcerated appellant provided absolutely no financial assistance to the child. A parent's imprisonment does not toll a parent's responsibilities toward her children. *See Zgleszewski v. Zgleszewski*, 260 Ark. 629, 542 S.W.2d 765 (1976). "We are aware that imprisonment imposes an unusual impediment to a normal parental relationship. However, even when parenthood is disadvantaged by this unfortunate factor, one could still solicit visits from [her child] and contact [her] with cards, letters and small gifts." *Id.* at 632, 542 S.W.2d at 767. The appropriate inquiry is whether the parent utilized those resources available while in prison to maintain a close relationship with the child. *Id.* I cannot gloss over the fact that while appellant was in prison in Arkansas, she did not send her child a single gift, and I will not excuse her total lack of contribution to her child because she was incarcerated. Although she was not employed while in prison, she could have made some token of a gift for her child.

Second, appellant failed significantly to communicate with her child for over a year. The majority claims that even if appellant failed significantly to communicate with the child that it did not occur for a year's time. I disagree with the majority's representation of the dates that are relevant in our analysis of measuring the one-year period. The majority opinion arbitrarily, and without citation to authority, begins counting time from the date appellees gained custody of the child. Pursuant to Ark. Code Ann. § 9-9-207(a)(2), we are directed to look for a period of time when a parent fails to support or communicate. The statute focuses upon a biological parent's failure to act. Therefore, the date that appellees gained custody is irrelevant.

The following are the critical dates and events that should be considered in the analysis. On April 23, 1999, the child was born. Upon her birth, the child was placed briefly with her grandmother, and then the child was moved to appellant's aunt and uncle's home. Wanda Sellers testified that "[a]fter she was born, [the child's] grandmother had her for about a month. Then she went to her Aunt Brenda's for a couple of months." Appellant testified that she did not know that the child had been moved from her aunt and uncle's home to appellees' home *until a prison caseworker told her.* This is evidence that appellant was not communicating with her aunt during or after the time that her aunt cared for the child.

Appellant gave appellees power of attorney only upon discovering from the caseworker that her child was in their custody. This was the only communication that appellant made or attempted to make with appellees or the child during her incarceration in Arkansas. On June 6, 2000, appellant was released from prison in Arkansas. On that day, rather than traveling within the state to see her child, appellant moved to Austin, Texas, to live with a boyfriend. This demonstrates that even upon her release from prison, appellant did not communicate with her child. Appellant did not communicate with her child until after she moved in with her boyfriend in another state, found employment, and saved enough money to buy a bus ticket to travel to Arkansas to visit her child. Therefore, appellant's first communication with her child was sometime after her release from prison.

For purposes of determining whether appellant failed to communicate with her child for one year, I believe that the relevant time period begins on or shortly after April 23, 1999, and extends until sometime after June 6, 2000. Undoubtedly, this time period extends over one year. I find no evidence, not even from appellant's own testimony, that she mailed cards, letters, or gifts to the infant during this one-year period. Furthermore, I find no evidence that appellant inquired with appellees as to the child's well-being or that she even requested a photograph of the child. The trial court was not required to find appellant's lack of contribution or communication to be a total failure but rather a significant failure. *Pender, supra.* I believe that appellant totally failed in both regards.

The majority opinion mentions that Wanda Sellers put a block on her telephone to prevent appellant from making calls to her from prison. I clarify that statement by saying that Wanda Sellers placed the block on her telephone after appellant was incarcerated in Texas. During the time appellant was incarcerated in Arkansas, no block was placed on Wanda Sellers's telephone. In either case, appellant could have written letters to appellees requesting updated information about the child, including the child's health, developmental progress, and growth. Appellant could have solicited appellees for visits to the prison with the child. There is no evidence that during her incarceration in Arkansas appellant made any effort to maintain a connection to her child other than furnishing appellees with her power of attorney. As such, I would hold that the trial court did not err in finding that appellant's consent for adoption was not required as appellant failed significantly to support and communicate with the child for over a year.

STROUD, C.J., joins.