RITA W. GRUBER, Chief Judge
The parties' dispute in this probate case involves a family-settlement agreement executed after the death of Lavon Carroll, appellant Jeffrey Trask's mother and appellee James Trask's grandmother. On appeal, Jeffrey assigns error to the circuit court's failure to enforce the agreement and to its alleged modification thereof. On cross-appeal, James, Jeffrey's nephew, argues that the family-settlement agreement is invalid and unenforceable. We affirm on direct appeal; we dismiss the cross-appeal for lack of jurisdiction.
Lavon Carroll passed away on September 28, 2014, leaving four grown children: Robert Trask, Jr., Karen Copeland, Jeffrey Trask, and Spencer Trask. Robert, a resident of Texas, passed away on January 19, 2015, several months after his mother's death.[1] Ms. Carroll left a will, pursuant to which she left her household furnishings and appliances to her husband and all the "rest, residue and remainder" of her estate to the trustee of the Lavon Carroll Trust (the "Trust") to be held subject to the terms and conditions therein. Although a copy of the Trust is not included in the record on appeal, the parties agree that it divides Ms. Carroll's assets into four equal shares, one for each of her children. The parties also agree that the Trust provides that upon Robert's death, his share of the Trust passed to his descendants, James and Todd Trask. Ms. Copeland was appointed as executrix of the Estate of Lavon Carroll (the "Carroll *279 Estate"). Jeffrey Trask was trustee of the Trust.
Ms. Copeland filed an inventory, accounting, and amended accounting, requesting the court for authority to make a final distribution, for fees, and for closure of the Carroll Estate. Jeffrey, as trustee of the residuary beneficiary of the will, objected to the inventory and accounting as incomplete and to the request to close the Estate as premature. Ms. Copeland filed a second amended accounting, and the parties exchanged discovery from 2016 through early 2017. In March 2017, a family-settlement agreement resolving these issues was executed by Jeffrey, individually and as trustee and beneficiary of the Trust; Karen Copeland, individually, as beneficiary of the Trust, and as administratrix of the Carroll Estate; Spencer Trask, as beneficiary of the Trust; and Vicki Trask, as administratrix of the Estate of Robert Trask, Jr., beneficiary of the Trust. The agreement stated that they had resolved their disputes regarding the inclusion and disposition of certain assets and the payment of certain expenses "subject to approval by James E. Trask and Todd Robert Trask as contingent beneficiaries of the Lavon Carroll Family Trust, and/or the So-Ordering thereof by the Saline County Probate Court as presented, or as may be modified by it upon hearing." Of particular import to the dispute on appeal, Vicki agreed in the family-settlement agreement to deliver to Jeffrey certain items in her possession. It is the possession and ownership of these items that is at the heart of the parties' dispute. The items include two Waterford crystal glasses, a bookcase that Ms. Carroll allegedly gave to Robert ten years before her death, several paintings, Robert's bronzed baby shoes, juice glasses, Christmas plates, and various other items that the parties agree have little financial value.
The circuit court entered a consent order on March 28, 2017, approving the family-settlement agreement and stating that the parties in possession of the personal property listed in the agreement "will deliver it to the State of Arkansas" for sale. The court also stated the following regarding James and Todd Trask:
The attached Stipulation of Settlement appears reasonable on the facts presented in the various pleadings. Notwithstanding, the Court recognizes the legal distinction between the two sons of Robert Trask, Jr., deceased, as contingent beneficiaries of the Lavon Carroll Family Trust and the Estate of Robert Trask, Jr. Given that distinction, James E. Trask and Todd Robert Trask, who are not signatories hereto but are beneficiaries of the Estate of Robert Trask, Jr., and impacted by the outcome hereof, are entitled to notice and an opportunity to object in their individual capacities. To that end, each shall have ten (10) business days following service hereof and of the attached Stipulation to file and serve any objection they may have hereto, whereupon an evidentiary hearing on notice will be set by the Court for presentation of evidence supporting the relief agreed to and any facts supporting such persons' objections thereto.
On April 11, 2017, the attorney for James and Todd entered an appearance on their behalf. According to Vicki's testimony, James subsequently called her and told her that the items in her possession "were his grandmother's, that they belong to Todd and him, and that he was sending movers to pick them up." On April 16, 2017, Vicki gave the items to Clear Lake Movers, who picked them up for James. On April 21, 2017, James and Todd filed an "Objection to Proposed Family Settlement Agreement" alleging that Texas law required the joint consent of James and *280 Vicki to bind Robert's estate. They also alleged that Vicki was not a beneficiary of the Trust, that she had no economic interest in further distributions from the Trust since the distributions would go not to Robert's estate but directly to James and Todd, and that James and Todd were necessary parties to any family-settlement agreement. They requested an evidentiary hearing.
The circuit court held a hearing on May 24, 2017, regarding their objection to the family-settlement agreement. At the hearing, their attorney argued that the agreement was not binding on them because James and Vicki were coadministrators of Robert's estate, and thus both must have signed the agreement on its behalf. They claimed that Vicki and James had agreed in their application for coadministration that all decisions relating to the estate must be made jointly and therefore that Vicki did not have the authority to act independently. Jeffrey's attorney introduced a copy of the Texas probate court's order, which did not include the requirement that all decisions be made jointly and appeared to allow either Vicki or James independently to bind the estate. The court entered an order on June 2, 2017, finding that Vicki had the apparent and actual authority to bind Robert's estate and overruled James and Todd's objection. The court ordered that the family-settlement agreement "shall be carried out and performed by the parties with all reasonable haste."
On July 10, 2017, Ms. Copeland, as personal representative of the Carroll Estate, filed an "Emergency Petition for Order of Immediate Delivery and Petition to Show Cause" alleging that the court had overruled the objection of James and Todd to the family-settlement agreement and that James had removed the items the agreement required Vicki to return to the Carroll Estate. She asked the court to enter an order requiring James to personally appear and show cause why he should not be held in contempt of the June 2, 2017, order. She also asked the court to compel immediate delivery of the items.
On July 13, 2017, James and Todd filed an objection to the court's June 2 order pursuant to Arkansas Code Annotated section 28-1-116(d),[2] alleging that an enforceable contract existed between Vicki and James that required them both to consent to any action taken on behalf of Robert's estate; that even if Vicki had authority to bind the estate independently, the Estate of Robert Trask had no interest in the Carroll Estate, and, therefore, Robert's estate had no standing to enter into the family-settlement agreement; that Robert's share of the Trust passed to his descendants, James and Todd, upon his death; and that they were denied due process by not being served with notice and the opportunity to participate in all proceedings and negotiations regarding the family-settlement agreement.
On July 17, 2017, James and Todd responded to the Carroll Estate's petition for order of immediate delivery and to show cause. They alleged that they had made a limited appearance to object to the family-settlement agreement and that the court did not have personal jurisdiction over them because they had not been served.
*281 They alleged that the family-settlement agreement spoke for itself but that they were not parties to that agreement and had no obligations arising from it. Finally, they contended that they intended to appeal from the June 2, 2017, decision of the court upon entry of a final order of distribution and had filed an objection to the order to preserve their right to appeal. They requested the circuit court to dismiss the Carroll Estate's petition.
Jeffrey responded to James and Todd's objection to the June 2 order, alleging that the court had already heard and addressed the arguments regarding the Texas probate order and that the arguments regarding Vicki and the Estate of Robert Trask's lack of standing were waived because they were not raised at the hearing. In a cross-motion, Jeffrey claimed that all parties with standing to consent or object to the family-settlement agreement were signatories thereto, that the court had properly overruled James and Todd's objection to the agreement, and that James and Todd had deliberately disobeyed the court's order by their actions. He asked the court to set a hearing at which Karen Copeland, Vicki Trask, James Trask, and Todd Trask were commanded to appear; to compel James and Todd to bring the property belonging to the Carroll Estate; and for a finding of contempt and consequent punishment.
James and Todd filed a supplemental response contending that the circuit court lacked jurisdiction over personal property allegedly belonging to Lavon Carroll and that the court lacked personal jurisdiction over James. James alleged that the court lacked power to command his personal appearance, to require him to transport property from Texas to Arkansas, or to hold him in contempt of an order the court lacked in rem jurisdiction to enter. Finally, James alleged that if the executrix of the Carroll Estate desired to litigate title to property, she should open ancillary proceedings in Texas against the Estate of Robert Trask and that she had no remedy in the Arkansas probate court regarding property in Texas. James alleged that the Carroll Estate could, alternatively, distribute the Carroll Estate's assets, including any interest in the disputed items in Texas, to the Trust and close the Carroll Estate. He claimed that the Trust could then litigate ownership of the items in Texas.
The circuit court held a hearing on September 26, 2017, at which neither Todd nor James appeared. The only testimony was from Vicki, who testified that James had called her and threatened that he would "sue her" if she did not give him the disputed items. He told her that the items had been his grandmother's, that they belonged to Todd and James, and that he was sending movers to retrieve them, which he subsequently did on April 16, 2017. After arguments of counsel, the court noted on the record that it was finding that the disputed items-which it referred to as "knick-knacks" and "junk"-belonged to the Carroll Estate, that the value of the items was less than had been expended on attorneys in that day's hearing, and that although James and Todd were in contempt of court for failing to attend, the court was not going to require the Carroll Estate to pursue the matter further, opining that it would be a waste of the Carroll Estate's assets. The court then stated, "If the trust wants to do that, your client is the Trustee and he can do it now or later in Texas with a writ of replevin or though criminal action, if necessary."
The court entered an order on October 19, 2017, finding that it had entered an order on March 28, 2017, approving the family-settlement agreement. The court also found that Vicki had agreed to transport *282 certain items of personal property to Jeffrey for disposition under the agreement; that the court had denied the objections of James and Todd to the agreement; and that James had caused the Estate's personal property to be removed from Vicki's possession to a storage facility in Texas owned by the Estate of Robert Trask, which precipitated the filing of the petitions and motions before the court. The court then found that "the Trustee of the Sole Beneficiary Jeffrey Trask may at his own expense act as agent of the Estate take proper legal action through Texas courts to retrieve any Estate Property for administration herein." The court also overruled James's objections to its exercise of personal jurisdiction over him, finding that he had waived any objection when he entered his appearance in the matter. Jeffrey timely appealed from the court's October 19, 2017, order. James filed a cross-appeal, which Jeffrey has moved to dismiss.
I. Jurisdiction
We turn first to our jurisdiction and Jeffrey's motion to dismiss. The timely filing of a notice of appeal is a jurisdictional prerequisite for this court. Sloan v. Ark. Rural Med. Practice Loan & Scholarship Bd. , 369 Ark. 442, 255 S.W.3d 834 (2007). Appellant filed his notice of appeal on Monday, November 20, 2017, from the court's interlocutory order entered on October 19, 2017. Rule 2(a)(12) of the Arkansas Rules of Appellate Procedure-Civil and Arkansas Code Annotated section 28-1-116 (Repl. 2012) allow a party to appeal all orders in probate cases at the interlocutory stage with certain exceptions not relevant here. Because Jeffrey's notice of appeal was filed within thirty days from entry of the order he is appealing, we have jurisdiction over the appeal. Ark. R. App. P.-Civ. 4(a) (2017).
A notice of cross-appeal must be filed within ten days after receipt of the notice of appeal, except that in no event shall a cross-appellant have less than thirty days from the entry of the order appealed. Id. In this case, James filed a motion in this court on December 21, 2017, alleging that the notice of appeal had not been served on him until December 18, 2017. The record had been filed with the court of appeals on December 19, 2017. James contended that he desired to file a cross-appeal challenging the validity of the family-settlement agreement and asked us to remand the case to the circuit court to permit him to file a notice of cross-appeal. We granted that motion, and James filed a notice of cross-appeal in the circuit court on February 9, 2018, to raise "the validity of the purported Family Settlement Agreement approved on intensive [sic] basis by the Court on the 2nd day of June 2017. James Trask also Cross-Appeals the factual and legal finding of the Court by Order entered October 19, 2017."
In his brief to this court, James's only point on cross-appeal is that the family-settlement agreement is invalid. He contends that the order approving the agreement was entered on June 2, 2017, and that he filed an objection to that order pursuant to Arkansas Code Annotated section 28-1-116 within sixty days to preserve his right to appeal from the decision. He argues that this court should consider his cross-appeal if it entertains Jeffrey's interlocutory appeal from the court's October 19, 2017, order because the October order is premised on the validity of the family-settlement agreement, which was upheld in the court's June order. He cites no law to support this argument.
We turn to Rule 2(a)(12) of the Arkansas Rules of Appellate Procedure-Civil, which authorizes interlocutory appeals in probate cases as long as they are timely filed. See *283 In re Estate of Stinnett , 2011 Ark. 278, at 6, 383 S.W.3d 357, 360 ("[I]f an order is appealable under Rule 2(a), it must be appealed within the thirty days after entry of the order as prescribed by Rule 4(a)."). James did not file a notice of appeal within thirty days from the court's order entered on June 2, 2017. While we recognize that Arkansas Code Annotated section 28-1-116(d) provides that an appeal from a "final order of distribution" brings up for review all prior, appealable orders and judgments to which an appellant has filed timely written objections, this is not an appeal from a final order of distribution. See also Lenders Title Co. v. Chandler , 353 Ark. 339, 349, 107 S.W.3d 157, 163 (2003) (rejecting argument that previous interlocutory order was appealable because the grounds supporting the order were "intertwined with" and "underlying" the properly appealed interlocutory order of class certification). Accordingly, we do not have jurisdiction to hear a cross-appeal advancing a challenge to the order entered on June 2, 2017, and we dismiss it. Because the cross-appeal contains no additional points, we dismiss the cross-appeal in its entirety.
II. Court's Failure to Enforce the Family-Settlement Agreement
For his first point on appeal, Jeffrey contends that the circuit court's refusal to enforce the family-settlement agreement-specifically, its refusal to force James to appear for examination and its refusal to order immediate delivery of the items of personal property being held by him in Texas-constitutes error. He argues that in the family-settlement agreement Vicki made concessions and obtained benefits on behalf of Robert's estate. He contends that there was consideration flowing from and to Robert's estate and that the family-settlement agreement is not ambiguous. He also argues that the circuit court made it clear that Vicki had the authority independently to bind Robert's estate and therefore it was required to compel James's testimony and force him to return the property that Vicki had agreed to return. Jeffrey recognizes that the court found James in contempt at the hearing for failing to appear, and he acknowledges that sanctions are discretionary with the court. He argues, however, that it was error for the court to decline to award sanctions intended to coerce return of the assets.
We review probate proceedings de novo, and we will not reverse the decision of the circuit court unless it is clearly erroneous. Buchte v. State , 337 Ark. 591, 990 S.W.2d 539 (1999). In reviewing the proceedings, we give due regard to the opportunity and superior position of the circuit court to determine the credibility of the witnesses. Amant v. Callahan , 341 Ark. 857, 861, 20 S.W.3d 896, 898 (2000). We turn to Arkansas law for guidance. Jeffrey relies on Arkansas Code Annotated section 28-49-103, which provides the following:
(a) If a personal representative or other person interested in the estate files with the court an affidavit stating that the affiant has good cause to believe that any person named in the affidavit has knowledge concerning or possession of any real or personal property or of any records, papers, or documents belonging to the decedent, or which affect his or her title to or rights in any property, the court shall have the power to cause the person to appear before the court and be examined on oath for the discovery of the same.
(b) Any person failing to appear when ordered or refusing to answer proper questions shall be adjudged *284 guilty of contempt of court and punished accordingly.
This statute does not authorize a circuit court to force someone to give property to an estate simply because "a person interested in the estate" believes that it belonged to the decedent. This statute authorizes a circuit court "to cause the person to appear before the court and be examined on oath for the discovery of the same." And while Jeffrey hints at the remedy of replevin, he did not pursue an action for replevin in this case. The above-quoted statute does not authorize replevin, and we need not decide whether such a remedy would have been appropriate here regarding property located in Texas and over which the parties disagree about ownership. Moreover, when ownership is disputed, as here, this statute does not empower a circuit court to adjudicate the right of possession. See also Raymond v. Raymond , 134 Ark. 484, 488, 204 S.W. 311, 312 (1918) (holding that the circuit court "had no jurisdiction of a suit to recover possession of the property [and that] the jurisdiction of the court was limited to a discovery of the property and an order to deliver the same where there was no claim of ownership on the part of the person holding possession, but the court had no power to adjudicate the right of possession where there was a claim of ownership on the part of the person in possession").
At the request of Jeffrey's attorney, the court stated from the bench that James and Todd were in contempt of court for not appearing. The court explained that it was not, however, directing the Estate to pursue the matter. However, the court's written order, apparently prepared by Jeffrey's attorney, did not include this finding of contempt. Indeed, the order contains no ruling at all on contempt or punishment therefor. An oral order announced from the bench does not become effective until reduced to writing and filed. Ashley Bancstock Co. v. Meredith , 2017 Ark. App. 598, at 14, 534 S.W.3d 762, 770. Thus, the issue of contempt is not before us.
III. Court's Modification of Family-Settlement Agreement
For his second point on appeal, Jeffrey argues that the circuit court erred in modifying the family-settlement agreement. Specifically, he argues that the circuit court's failure to require James to deliver the disputed property to Arkansas constitutes a modification of the agreement. We disagree. The court failed to grant Jeffrey the remedy he sought. It did not modify the agreement. Vicki agreed to deliver the disputed items to Jeffrey. James was not a party to the agreement, did not agree to give Jeffrey any property, did not execute the agreement, and openly disputes ownership of the property. The court simply failed to require him to give Jeffrey the property. It did not modify the agreement, and it did not prohibit him from pursuing recovery of the property in another forum.
Affirmed on direct appeal; cross-appeal dismissed without prejudice.
Virden and Whiteaker, JJ., agree.

Vicki Trask, Robert's wife and his children's stepmother, and James Trask, one of Robert's sons, were appointed by a Texas probate court as independent coadministrators of Robert's estate.

This statute provides:
When an appeal is taken from the order of final distribution in the administration of a decedent's estate, all prior appealable orders and judgments to which the appellant has filed objections in writing within sixty (60) days after the order of judgment was rendered and from which an appeal has not been taken, except orders admitting or denying the probate of a will or appointing a personal representative, shall be reviewed at the election of the appellant.