Cite as 2020 Ark. App. 115

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-19-694

| | |
|---|---|
| IN THE MATTER OF THE ADOPTION OF B.R. | Opinion Delivered: February 19, 2020 |
| RUSTY RAITERI | APPEAL FROM THE CLEBURNE COUNTY CIRCUIT COURT [NO. 12PR-18-56] |
| APPELLANT | |
| V. | |
| | HONORABLE DON MCSPADDEN, JUDGE |
| CLAYTON NOWAK | |
| APPELLEE | REVERSED AND DISMISSED |

## RAYMOND R. ABRAMSON, Judge

Rusty Raiteri appeals the adoption decree granting an adoption petition filed by his former wife's current spouse, Clayton Nowak, concerning his daughter, B.R. On appeal, Rusty argues that the circuit court erred by finding that (1) his consent to the adoption was not required and (2) the adoption was in B.R.'s best interest. We reverse and dismiss.[1]

On April 17, 2018, Clayton filed a petition for adoption of B.R. He stated that B.R. was born on June 8, 2011, and that he married B.R.'s mother, Ashley Nowak, on October 29, 2016. He asserted that Rusty's consent to the adoption was not required because Rusty had failed significantly and without justifiable cause to communicate with or provide for the care and support of B.R. for at least one year. On May 17, 2018, Rusty contested the adoption.

---

[1]This is a one-brief appeal as Clayton filed no response.

The court held a hearing on March 19, 2019.[2] Ashley testified that she and Rusty divorced in February or March 2013. She explained that during their marriage, she had witnessed Rusty abuse drugs, which led to their divorce. She testified that their divorce decree granted Rusty visitation rights and that he exercised his visitation rights until March 2017. She stated that at that time, a friend informed her that Rusty had been using drugs, so she asked Rusty to take a drug test. Ashley testified that Rusty refused to take a test and that he did not see B.R. from that point forward. Later, on August 30, 2017, a circuit court ordered Rusty to pass a drug test before his visitation with B.R. could resume. Ashley also noted that in March 2018, the court suspended Rusty's visitation rights but informed Rusty that he could petition for reinstatement of those rights at the instant adoption hearing. She further testified that Rusty had filed a contempt motion against her alleging that she had prevented him from visiting B.R. but that the court had denied it.

Ashley further testified that Rusty's child-support payments had been sporadic since their divorce in 2013. She stated that from December 2015 through November 2017, Rusty made only four payments. Specifically, the child-support records show that Rusty made payments on December 9, 2015; March 15, March 31, August 2, 2016; and March 29, 2017. He resumed paying on November 16, 2017. She testified that in March 2018, he made a lump-sum payment for his arrears and that he is now current. She testified that Rusty's parents and grandparents had sent B.R. gifts, but she denied that Rusty had sent

<hr>

[2]The court originally scheduled the hearing for June 2018, but the hearing was continued.

anything to B.R. She also acknowledged that Rusty had attempted to contact her on her cell phone and that she had sent him B.R.'s Social Security number in November 2017 for insurance purposes.

As to her relationship with Clayton, Ashley stated that she married him in 2016 and that they have two sons. She further stated that Clayton helps her care for B.R. and that they have a father–daughter bond. She noted that B.R. calls Clayton "daddy."

Clayton testified and requested that the court grant his petition to adopt B.R. He stated that he is an independent contractor for a flooring company and has the facilities and resources to care for her. He testified that he regularly takes B.R. to school and picks her up from her after-school activities.

Rusty testified that he lives in Mississippi with his grandparents and that he works in an office position at Estes Express Trucklines. He noted that he has been employed there for almost two years but that since he and Ashley divorced in 2013, he had been intermittently employed. He specifically noted that he had been unemployed for several months in 2016 or 2017 due to a back injury. He stated that in March 2018, he made a lump-sum child-support payment using a loan from his grandmother and that he is now current on his child-support arrears. He testified that he has also been paying for B.R.'s health insurance for about a year and a half.

Rusty testified that prior to March 2017, he regularly exercised visitation with B.R. He stated that he lived in Memphis and that he had traveled to Heber Springs to pick her up. Rusty acknowledged Ashley's demand for a drug test in March 2017, and he stated that he eventually produced a clean drug screen in February or March 2018 after the

court's order. He stated that he tried to contact Ashley on her cell phone from June 2017 through May 2018, but she ignored his calls. He offered his AT&T call logs, which show that Rusty contacted Ashley nearly once a month from June 2017 through the filing of the adoption petition.

Rusty testified that he has now been opioid free for a year and six months. He noted that he has a prescription for Suboxone and attends Narcotics Anonymous meetings three times a week. He further testified that he regularly takes drug tests for his employment and has not failed a test.

Following the hearing, on May 10, 2019, the court entered an order granting Clayton's petition for adoption of B.R. The court found that Rusty's consent to the adoption was not required because he had failed significantly and without justifiable cause to communicate with or provide for the care and support of B.R. for at least one year. The court further found that it was in B.R.'s best interest to grant the adoption. In the order, the court specifically found Rusty not credible. This appeal followed.

We review adoption proceedings de novo on the record. *Newkirk v. Hankins*, 2016 Ark. App. 186, 486 S.W.3d 827. Adoption statutes are strictly construed, and a person wishing to adopt a child without the consent of the parent must prove, by clear and convincing evidence, that consent is unnecessary. *Id.* A circuit court's finding that consent is unnecessary due to a failure to support or communicate with the child will not be reversed unless clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In cases involving minor children,

4

the circuit court must utilize to the fullest extent all its power of perception in evaluating the witnesses, their testimony, and the children's best interest. *Id.* Because the appellate court has no such opportunity, the superior position, ability, and opportunity of the circuit court to observe the parties are afforded their greatest weight in cases involving minor children. *Id.*

On appeal, Rusty argues that the circuit court erred by finding that his consent to the adoption was not required because he failed significantly and without justifiable cause to communicate with or provide care and support for B.R.

Pursuant to Arkansas Code Annotated section 9-9-207(a)(2) (Repl. 2015), a parent's consent to adoption is not required of

> a parent of a child in the custody of another, if the parent for a period of at least one (1) year has failed significantly without justifiable cause (i) to communicate with the child or (ii) to provide for the care and support of the child as required by law or judicial decree.

Justifiable cause means that the significant failure must be willful in the sense of being voluntary and intentional; it must appear that the parent acted arbitrarily and without just cause or adequate excuse. *Taylor v. Hill*, 10 Ark. App. 45, 661 S.W.2d 412 (1983). "Failed significantly" does not mean "failed totally." *Pender v. McKee*, 266 Ark. 18, 28, 582 S.W.2d 929, 934 (1979). It only means that the failure must be significant, as contrasted with an insignificant failure. *Id.* It denotes a failure that is meaningful or important. *Id.* The one-year requirement applies to any one-year period between the date of the child's birth and the date the petition for adoption was filed and is not limited to the year immediately preceding the filing of the adoption petition. *Ray v. Sellers*, 82 Ark. App. 530, 120 S.W.3d 134 (2003).

We first address Rusty's argument concerning the court's finding that he failed to communicate with B.R. for one year. He argues that the evidence shows that Ashley unilaterally barred him from visiting B.R. in March 2017, and he points out that he regularly exercised his visitation rights until that time. He further points out that he called Ashley and sent her messages after she barred his visitations, but she did not respond.

We agree. Based on the evidence presented below, we simply cannot say that Rusty failed significantly and without justifiable cause to communicate with B.R. for one year. We acknowledge that the undisputed evidence shows that Rusty did not communicate with B.R. from March 2017 through the filing of the adoption petition in April 2018. However, Ashley barred his visitations without a court order from March 2017 through August 2017. Further, after the court ordered Rusty to take a drug test in order to resume visitation, he asked the court to hold Ashley in contempt for withholding visitation. Moreover, Rusty's call records show that from June 2017 through April 2018 Rusty contacted Ashley approximately once a month. B.R. was six years old during this one-year period. Thus, Ashley had complete control over the child's communication. We cannot say that these circumstances constitute a significant failure to communicate without justifiable cause, and we hold that the circuit court erred in so finding.[3]

In reaching this conclusion, we are mindful of our supreme court's declaration that

the law is solicitous toward maintaining the integrity of the natural relation of parent and child; and in adversary proceedings in adoption, where the absolute severance of that relation is sought, without the consent and against the protest of the parent, the inclination of the courts, as the law contemplates it should be, is in favor of maintaining the natural relation.

_____

[3]We recognize that the circuit court specifically found Rusty not credible, but our holding is based on Ashley's testimony and the documentary evidence.

*Fox v. Nagle*, 2011 Ark. App. 178, at 14, 381 S.W.3d 900, 907 (quoting *In re Adoption of Glover*, 288 Ark. 59, 62, 702 S.W.2d 12, 13–14 (1986)).

Rusty also argues that the circuit court erred in finding that his consent to the adoption was not required because he failed significantly and without justifiable cause to support B.R. for one year. He acknowledges that there were gaps in his child-support payments, but he asserts that he never ceased paying child support for a full year. He further points out that he paid his child-support arrears before the adoption petition was filed and that he now regularly pays support.

We again agree with Rusty that the circuit court erred in finding that he failed significantly and without justifiable cause to support B.R. for a period of one year. The circuit court found that Rusty had failed significantly to pay support between December 2015 and March 2017. The child-support records show that Rusty made payments on December 9, 2015; March 15, March 31, August 2, 2016; and March 29, 2017. He then resumed making payments on November 16, 2017. Thus, Rusty failed to make some payments; however, we cannot conclude that these gaps constitute a significant failure to provide support for B.R. for one year warranting termination of Rusty's parental rights. We further point out that after Rusty resumed making payments in November 2017, he continued to make payments through the filing of the adoption petition, and he paid his arrears in full prior to the filing of the petition. Our supreme court recently stated that

> [a]lthough we have held previously that the one-year period referenced in section 9-9-207 can be any one-year period and is not required to be the one-year period immediately preceding the filing of the adoption petition, we believe that circuit courts should consider the parent's conduct, particularly in the period before the filing of the petition, in determining whether the parent's consent to an adoption should be required.

7

*Martini v. Price*, 2016 Ark. 472, at 6, 507 S.W.3d 486, 490. Under these facts, we hold that the circuit court again erred in finding that Rusty failed significantly and without justifiable cause to pay support for one year.

Accordingly, because the circuit court clearly erred in finding that Rusty failed significantly and without justifiable cause to communicate with and to provide care and support for B.R., the court erred in finding that his consent to the adoption was not required. We therefore reverse and dismiss. Our holding renders moot Rusty's second argument that the circuit court erred in finding that the adoption was in B.R.'s best interest. *See Fox*, 2011 Ark. App. 178, 381 S.W.3d 900.

Reversed and dismissed.

GLADWIN and BROWN, JJ., agree.

*Turnage Law Firm, P.A.*, by: *Christopher C. Turnage*; and *Chrestman Group, PLLC*, by: *Keith L. Chrestman*, for appellant.

One brief only.